469 So.2d 55 (1984)
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY
v.
Hollis HOLLAND, Administrator of Estate of Clara J. Holland, Deceased.
No. 54413.
Supreme Court of Mississippi.
December 12, 1984.
Rehearing Denied May 22, 1985.
Jerry O. Terry, Greaves, Terry & Sheely, Gulfport, for appellant.
Robert P. Shepard, Murphy & Shepard, Lucedale, for appellee.
Before WALKER, P.J., and PRATHER, SULLIVAN and SUGG, JJ.
PRATHER, Justice, for the Court:
The subject of this appeal is whether the exclusive remedy provision of the Workers' Compensation Act bars an action by an injured worker against the carrier, predicated upon the carrier's intentional refusal to pay workers' compensation medical and weekly compensation benefits notwithstanding an admitted residual permanent disability.
*56 Plaintiff Clara J. Holland[1] (Holland) filed her complaint in the Circuit Court of Greene County seeking damages from the defendant, Southern Farm Bureau Casualty Insurance Company (Farm Bureau), for tortious breach of contract, breach of fiduciary duties and intentional infliction of mental distress based upon the defendant's refusal to pay workers' compensation benefits. Farm Bureau is the workers' compensation insurance carrier for Mrs. Holland's employer; however, this suit does not join the employer as it alleges an independent tort committed by the carrier outside of the scope of plaintiff's employment.
Defendant moved to dismiss the complaint on the ground that, under the exclusiveness of remedies provision of the Mississippi Workers' Compensation Act, jurisdiction over the matter was vested exclusively in the Mississippi Workers' Compensation Commission. The Circuit Court, Darwin M. Maples presiding, overruled the motion. The court then granted defendant's motion for an interlocutory appeal to this Court on the dispositive issue of the application of the exclusivity of remedies provision of the Mississippi Workers' Compensation Act to a workers' compensation insurance carrier.

I.
On October 6, 1977, Ms. Holland, a meat wrapper at the K & B Slaughter House, suffered a back injury while lifting a 50 pound tray of meat. As a result of the injury, Ms. Holland underwent back surgery in December of 1977.
The carrier paid Ms. Holland's medical bills and temporary total benefits until July 26, 1979, when it terminated her benefits on medical advice. This interlocutory appeal on motion to dismiss does not develop any facts relating to the termination procedure by the carrier. Following an order of the Mississippi Workers' Compensation Commission of September 8, 1981, the carrier resumed payment of temporary total disability benefits to Ms. Holland. This suit was then filed.
Ms. Holland alleges that the intentional refusal of the insurance carrier to pay workers' compensation benefits was calculated to force her into an inadequate settlement of her claim and constituted a tortious breach of contract, a breach of fiduciary duties and the intentional infliction of mental distress, for which she seeks compensatory ($1,000,000) and punitive ($5,000,000) damages.

II.
The sole issue presented by this appeal is whether the exclusive remedy clause of the Mississippi Workers' Compensation Act bars a claimant, who has sustained an injury covered by the Act, from maintaining an action against the insurance carrier for the commission of intentional torts in the processing of a worker's compensation claim.
The exclusive remedy provision of the Mississippi Workers' Compensation Act provides that "the liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee ... on account of such injury or death, ... ." Miss. Code Ann. § 71-3-9 (1972).
Subsequent to the initiation of the present appeal, this Court, in Taylor v. U.S. Fidelity & Guaranty Co., 420 So.2d 564 (Miss. 1982), held that section 71-3-9 barred a common law tort action by an employee against the compensation carrier based upon the negligent failure to pay workers' compensation benefits by the carrier. Farm Bureau contends that Taylor disposes of the present appeal. Appellee Holland, on the other hand, argues that the immunity granted to the carrier in Taylor applies only to a tort action based on negligence and does not bar an action against the carrier based upon an intentional tort.
*57 The declaration in Taylor charged that the carrier:
"negligently, carelessly, wrecklessly [sic], willfully and hazardiously [sic], failed, refused and neglected to process legitimate medical claims...." Other allegations are to the effect that the defendant in like manner declined responsibility for the hospitalization and other expenses related to Taylor's injury and needful treatment. For his resulting "fright, grief, shame, humiliation ... worry ... physical pain ... emotional stress", the plaintiff demanded $5,000,000 in damages.
420 So.2d at 564.
Appellant, while conceding that the declaration in Taylor did not explicitly allege an intentional tort, argues that both the basis of the claim (malicious refusal to pay benefits) and the quality of damage alleged (emotional stress, mental stress, worry), are virtually identical to the claim of Ms. Holland; therefore, it is argued, Holland's action is barred under the holding of Taylor.
A review of the Taylor record discloses without question that the pleading sounds in negligence. No intentional tort is alleged, as is present in the allegation of this case. The rule in Taylor is accordingly limited to cases where the injured worker attempts to sue the carrier for negligent refusal to pay. In the case sub judice the pleading alleges the withholding of compensation for no legitimate or arguable reason and in an effort to force a settlement for an inadequate amount, harrassment regarding an auto insurance policy issued by the same company, refusal to pay medical bills, using economic pressure to force a settlement, all such acts with "grossness and recklessness" as to evince utter indifference to the plaintiff. The comparison of the pleading factually distinguishes the cases. This Court, therefore, concludes that Taylor does not control this case and has no application to cases alleging independent, intentional torts between a worker and the employer's compensation carrier.
The Taylor court reached its conclusion by analogy to other third party situations which, significantly, all involved actions based on negligence. McCluskey v. Thompson, 363 So.2d 256 (Miss. 1978) (action by employee against co-employee based upon negligence barred by exclusivity provision); Trotter v. Litton Systems Inc., 370 So.2d 244 (Miss. 1979) (action by employee against doctor selected by employer based upon negligence barred by exclusivity provision); Brown v. Estess, 374 So.2d 241 (Miss. 1979) (action by employee against officer of corporation acting within scope of corporate authority based upon negligence barred by exclusivity provision); Noe v. Travelers Insurance Co., 172 Cal. App.2d 731, 342 P.2d 976 (1959) (action by employee against Carrier based upon negligent delay in providing medical care barred by exclusivity provision).
The argument for a distinction between actions based upon negligence and those based upon intentional torts is supported by this Court's prior decisions. In McCluskey, supra, this Court recognized expressly such a distinction:
Our Act and the common law right to sue a fellow employee for negligence, as opposed to an intentional tort, cannot coexist, so the common law right to sue a fellow employee where the injured employee is covered by the Act must give way.
363 So.2d at 264.
An analagous situation was discussed by this Court in Miller v. McRae's Inc., 444 So.2d 368 (Miss. 1984) when the Court distinguished between an accidental injury "arising out of and in the course of employment" and an "injury sustained as the result of a false imprisonment". This Court held that injuries from false imprisonment were not the result of an "accidental injury", and the Workers' Compensation Act is not the exclusive remedy available to the injured party. Miller, supra, at page 370-371. The Miller decision stated that in resolving the exclusivity of remedy question in workers' compensation cases, the answer is determined by asking (1) whether *58 the injury arose out of and in the course of employment, and (2) is the injury compensable under the Act. "[I]f the injury is not compensable under the Act, the Act does not provide the exclusive remedy." Miller, supra.
The majority of courts that have addressed the question have held that exclusivity provisions do not bar an action by an injured worker against the compensation carrier where the basis of the action is an intentional tort. Hollman v. Liberty Mutual Ins. Co., 712 F.2d 1259 (8th Cir.1983) (bad faith refusal to pay claim); Hayes v. Aetna Fire Underwriters, 609 P.2d 257 (Mont. 1980) (refusal to pay benefits and medical bills); Coleman v. American Universal Ins. Co., 86 Wis.2d 615, 273 N.W.2d 220 (1979) (bad faith refusal to pay claim, intentional infliction of emotional distress); Gibson v. National Ben Franklin Ins. Co., 387 A.2d 220 (Me. 1978) (intentional infliction of mental distress); Stafford v. Westchester Fire Ins. Co. of New York, Inc., 526 P.2d 37 (Alaska 1974) (intentional infliction of mental distress); Unruh v. Truck Ins. Exchange, 7 Cal.3d 616, 102 Cal. Rptr. 815, 498 P.2d 1063 (1972) (assault and battery, intentional infliction of emotional distress).
The employee's right to sue the carrier for intentional torts has been upheld on several grounds. First, in committing intentional torts, the insurance carrier ceases to be the "alter ego" of the employer. Rather, the carrier is involved in an independent relationship with the employee when committing such tortious acts. Gibson, 387 A.2d at 222-223; Martin, 497 F.2d at 330-331; Stafford, 526 P.2d at 43; Unruh, 498 P.2d at 1073; Coleman, 273 N.W.2d at 223.
Secondly, penalty provisions provided by state statutes, while adequate compensation for negligent conduct, were not intended as exclusive remedies for intentional wrongdoings. See 53 Miss.L.J. 120 (1983). Where the wrong is intentional, malicious or calculated to cause intimidation, the claimant is entitled to another remedy. Gibson, 387 A.2d at 223; Martin, 497 F.2d at 331; Stafford, 526 P.2d at 43; Coleman, 273 N.W.2d at 224.
Mississippi Code Annotated section 71-3-37(5) and 71-3-37(6) (1972) provides for ten percent and twenty percent penalty for non-payment of an installment of compensation dues. This provision of the Act did not contemplate the commission of an independent tort, and its penalty is hardly adequate to deter willful actions of an overreaching insurance company against a weekly wage earner. In the case sub judice the maximum penalty for Ms. Holland's denial of benefits before commission order would have only been $2.50 per week. The penalty provisions, designed to provide some measure of compensation where claims are not promptly paid due the negligence of the carrier, are inadequate to deter intentional wrongdoing by the carrier.
The minority view holds that statutory provisions provide the exclusive remedy for a Workmen's Compensation claimant, thus barring any common law action against the carrier. Escobedo v. American Employers Insurance, 547 F.2d 544 (10th Cir.1977) (tort action against carrier for bad faith termination of payments barred by exclusivity provision); Ragsdale v. Watson, 201 F. Supp. 495 (D.C.Ark. 1962) (claim against carrier for wrongful non-payment barred by exclusivity provision); Sandoval v. Salt River Project, etc., 117 Ariz. 209, 571 P.2d 706 (Ct.App. 1977) (action by employee against self-insured employer for breach of fiduciary duty, intentional infliction of mental suffering based upon wrongful refusal to pay benefits barred by exclusivity provision).
We hold that the majority view permitting action for an independent tort against an insurance carrier in Workers' Compensation cases is in line with the thrust of our recent decisions recognizing that punitive damages are appropriate where an insurance company intentionally and in bad faith refuses payment of a legitimate claim in order to prevent insurer from forcing inadequate settlement. Reserve Life Insurance Company v. McGee, 444 So.2d 803 (Miss. 1983); Standard Life *59 Insurance Co. of Indiana v. Veal, 354 So.2d 239 (Miss. 1978). A worker's compensation claimant maintaining an action against the carrier based upon a wrongful refusal to pay his claim must, of course, allege and prove the recognized elements of such a claim in order to be entitled to punitive damages. Reserve Life, supra, at 808, 809.
This is a question of statutory construction. The legislature of this state has the authority to provide that in any event the injured worker's exclusive remedy against the carrier is compensation. We hold today that it has not done so. Section 71-3-9, the exclusiveness of remedy provision, covers only "liability ... to the employee ... on account of such injury or death, ... ." The liability sought here to be imposed upon Farm Bureau does not arise out of the injury suffered by Ms. Holland on October 6, 1977. It derives from the independent and allegedly intentional, tortious conduct of Farm Bureau in refusing to pay benefits owing under the Act without an arguable basis therefor.
We hold, therefore, that the exclusivity provision of the Workers' Compensation Act does not bar an action by the employee against the insurance carrier for the commission of an intentional tort. The independent tort is not compensable under our Workers' Compensation Act and to extend immunity to compensation carriers for a separate injury to workers goes far beyond the intent of the act.
Therefore, the order of the circuit court overruling Southern Farm Bureau Casualty Insurance Company's motion to dismiss is affirmed.
This Court does not address the question of whether this appeal from an interlocutory order of the circuit court may be heard. The point has not been raised by any party and, more specifically, the appellee has not interposed an objection to our hearing the appeal. This Court, therefore, addresses the merits of the question raised because of the time, expense and effort expended by the parties. In a supervisory capacity this action is warranted by this Court.
AFFIRMED.
BOWLING, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, J., dissent.
PATTERSON, C.J., not participating.
WALKER, Presiding Justice, dissenting.
I respectfully dissent from the holding of the majority that this case is not controlled by Taylor v. United States Fidelity & Guaranty Co., 420 So.2d 564 (Miss. 1982) which held that the liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee as provided for in the Mississippi Workmen's Compensation Act, codified as Mississippi Code Annotated section 71-3-9 (1972). The declaration filed in Taylor is so similar to the declaration in this case that it is indistinguishable.
The majority reasons that the declaration in Taylor was couched in terms of negligence and that the declaration sub judice is couched as an intentional tort and that therein lies the difference in the two cases. The majority may make such a statement, but that defies an objective analysis of the Taylor case. For instance, Justice Broom writing in Taylor begins his opinion by saying "Wrongful refusal to pay certain workmen's compensation benefits is asserted ..." (Emphasis added). The implication at the threshold of the opinion, therefore, was that the action of USF & G Company was intentional. He goes on to quote from the Taylor declaration saying that the "Essence of the declaration before us is the allegation that USF & G ... `negligently, carelessly, wrecklessly [sic], willfully and hazardiously [sic], failed, refused and neglected to process legitimate medical claims ...'" (Emphasis added). In that case the trial court sustained a demurrer to the declaration and we affirmed. It is readily apparent that the Taylor declaration alleged, among other things, that USF & G had acted willfully.
*60 Justice Broom in Taylor then poses the question to be answered thusly:
IS AN EMPLOYEE COVERED BY MISSISSIPPI WORKMEN'S COMPENSATION STATUTES ENTITLED TO MAINTAIN A COMMON LAW TORT ACTION AGAINST THE COMPENSATION CARRIER AND ITS REPRESENTATIVES BASED UPON ALLEGATIONS OF BAD FAITH AND MALICIOUS REFUSAL OF THE CARRIER TO PAY COMPENSATION BENEFITS? (Emphasis added).
420 So.2d at 565.
He then went on to hold:
After carefully considering the issue presented and the authorities cited in the briefs, we must reject the plaintiff's argument. We find that the authorities cited by him are not persuasive in the context of the facts and the wording of the statutes before us in this case. Upon this record, we cannot say that the legislators, in codifying "Exclusiveness of Liability" in § 71-3-9, supra, intended to allow a tort action such as the one asserted here by the plaintiff.
420 So.2d at 566.
If the Court would overrule Taylor, it would at least be acting with intellectual honesty. To ignore Taylor by trying to distinguish it is inexcusable.
Workmen's compensation insurance premiums are a substantial burden on employers. By employers, I mean virtually every business enterprise in this State which has five or more employees. This burden should not be increased by permitting lawsuits for exorbitant and unlimited claims (in this case $6,000,000) against insurance carriers arising out of non-payment of benefits.[1] To permit such suits will cause insurance carriers to be forced to pay legitimately doubtful claims. This can have but one effect and that is the soaring cost of workmen's compensation insurance which must be paid by employers. Another effect will be the certain bankruptcy of some insurance companies and the loss of benefits of any sort to their policyholders. The general public will be the ultimate looser.
I am of the opinion that the demurrer to the declaration should have been sustained and the case dismissed and would reverse the judgment of the trial court.
ROY NOBLE LEE, P.J., joins this dissent.
HAWKINS, Justice, dissenting:
I concur the circuit judge was correct in overruling the motion to dismiss of the defendant insurance company, but regret an interlocutory appeal was granted under Miss. Code Ann. § 11-51-7 (1972, as amended). He should have retained the cause until the facts were developed and then ruled.
This Court should have sent this case back to the circuit court by return mail, because of an untimely and improvident appeal.
Instead, the majority resorts to its recently acquired distressing propensity to inaugurate a new principle of law even though such action is in no way necessitated by the record before us.
In Taylor v. U.S. Fidelity & Guaranty Co., 420 So.2d 564 (Miss. 1982), an injured employee sued the insurance carrier for "negligent, reckless, wilful and hazardous" failure and refusal to pay his workmen's compensation benefits, and thereby causing him "shame, humiliation, physical pain and emotional distress." The circuit judge sustained the insurance company's demurrer, and we affirmed.
Although not specifically alleged in Taylor's declaration, we nevertheless held an employee could not maintain a suit against an insurance carrier based upon "bad faith and malicious" refusal to pay a workmen's compensation claim. Rather, we stated his remedy was limited solely to the provisions *61 of the Mississippi Workmen's Compensation Act.
What is the outer boundary of Taylor, supra? Is its application unlimited? Is it impossible for an insurance company to commit an independent tort in the handling of a workmen's compensation insurance claim?
Since I do not believe Taylor should have unlimited application, I think it was proper to overrule the motion to dismiss. Having overruled the motion, the circuit judge obviously should have proceeded to try the case, and a judgment rendered based upon the facts of the case.
Just how far should Taylor be extended? This can only be answered sensibly from the facts shown in a case. A trial judge can then determine, from the facts of that case, whether it comes under Taylor or not. This Court, also, can look at a record with actual facts and determine whether the case is somehow outside the parameters of Taylor, or whether there should be an exception made to Taylor under these particular facts, or whether we should alter or modify in some degree what we said in Taylor. We can make observations with precision using the calipers of an actual experience.
In such a case we would have actual facts as to what has occurred guiding us in the direction we should take, not the imagination of a judge.
Here we do not know just what it was that the insurance company did to Mrs. Holland. We can guess until doomsday.
Yet, armed with no more than a vague, general complaint we proceed to emasculate Taylor (without, however as Justice Walker notes, the courage to admit it).
The majority makes a parallel trail to Taylor, and there will be absolutely no way an attorney or trial judge can read the opinions in Taylor and the majority's in this case and determine whether damages in any specific case are limited to the provisions of the Mississippi Workmen's Compensation Act or not. So much for the certainty the majority opinion gives to the law.[1]
Having addressed this case completely from what I view is a practical standpoint, I proceed to the law.

LAW
Based upon the court's overruling the defendant's motion to dismiss, the motion for this interlocutory appeal and the order granting it were under the provisions of Miss. Code Ann. § 11-51-7 (1972, as amended).
The majority opinion shows the appeal does not settle "all the controlling principles of the case" envisioned by the statute and numerous cases thereunder, because it is being remanded for trial. We may very well have the same question again if and when the case comes back to us on appeal. Does the appeal, as also envisioned by the statute, "avoid expense and delay"? This question answers itself.
Also, the motion to dismiss in this case served the same function as a demurrer. This Court has repeatedly held an appeal does not lie from an order overruling a demurrer. See: Stirling v. Whitney National Bank, 170 Miss. 674, 150 So. 654 (1933); Wilson v. Wilson, 202 Miss. 540, 32 So.2d 686 (1947); and Hardey v. Candelain, 204 Miss. 328, 37 So.2d 360 (1948).
Finally, as anyone who reads § 11-51-7, supra, can readily perceive, appeals under this section are limited to chancery court *62 appeals. A circuit court cannot grant an interlocutory appeal in a civil case. See: Cotton v. Veterans Cab Company, 344 So.2d 730 (Miss. 1977); Southern Saw & Mower Distributors, Inc. v. Dolman North American Corporation, 317 So.2d 400 (Miss. 1975); and State Tax Commission v. Clinton, 267 So.2d 312 (Miss. 1972).
All of this would have been obvious to a majority not so indefatigably intent upon benefitting this State with their wisdom.
This Court does not have the authority to hear this appeal. The final paragraph of the majority that because the question of appeal from an interlocutory order was not raised by the parties the Court is going to consider the appeal "because of the time, expense and effort expended by the parties," is astonishing. It evinces a calloused indifference either to basic research or what our previous decisions have repeatedly stated.[2] This Court has a profound obligation in each case on its own to determine whether we have the authority (jurisdiction) to hear an appeal. The majority ignores this obligation.
In Farrar, et al. v. Phares, et al., 232 Miss. 391, 394, 99 So.2d 594 (1958), we stated: "Whether the appeal will lie from an interlocutory decree is a question this Court should raise of its own motion. It involves jurisdiction." [Emphasis added]
In Slater v. Bishop, et al., 251 Miss. 306, 308-309, 169 So.2d 465 (1964), we stated: "Though the right of the appellant to appeal is not contested by appellees, it is nevertheless the duty of this Court to raise the question which involves jurisdiction, on its own motion, of whether this appeal from the interlocutory decree will lie."
Another case involving the authority of this Court to hear an interlocutory appeal in which the parties did not object was Management, Inc. v. Crosby, 186 So.2d 466, 467 (Miss. 1966), wherein we stated: "We are thus requested to determine issues which the trial court has not ruled upon. For this reason we are of the opinion that the appeal was improvidently granted and that it is our duty as an appellate court to raise the point as it involves jurisdiction." [Emphasis added]
On another unauthorized appeal from a circuit court, we stated in Byrd v. Sinclair Oil & Refining Company 240 So.2d 623 (Miss. 1970): "It is the primary duty of this Court, on its own motion, to determine its jurisdiction."
In Cotton v. Veterans Cab Company, Inc., 344 So.2d 730 (Miss. 1977), another unauthorized interlocutory appeal from a circuit court, after holding there was no authority for an interlocutory appeal from the circuit court, we concluded: "The statutory scheme is designed to prevent the splitting of appeals. The Court of its own motion takes note of its lack of jurisdiction.... The appeal is dismissed." See, also: Coats v. Coats, 227 Miss. 264, 86 So.2d 4 (1956); H.M. Hall v. Merchants & Farmers Bank, 222 Miss. 813, 77 So.2d 310 (1955); Smith v. Smith, et al., 221 Miss. 180, 72 So.2d 230; In re Hollensbee's Estate (Allen v. First National Bank of Jackson), 218 Miss. 700, 67 So.2d 389 (1953); and Gilleylen v. Martin, 73 Miss. 695, 19 So. 482 (1896).
ANDERSON, Justice, specially concurring:[1]
I write separately only to address the jurisdictional issue. The majority has decided *63 not to address the question of an interlocutory appeal from the circuit court because the parties did not raise the question or interpose an objection. I am of the opinion that this is the appropriate time and case to address this issue.
It is accepted constitutional doctrine in this and every other jurisdiction in this country that the highest court of the jurisdiction, generally denominated the Supreme Court, has such subject matter jurisdiction as is vested in it by the constitution of the jurisdiction.
In this state the judicial power is vested in this Supreme Court and such lower courts as are provided for in the constitution or otherwise authorized by law. Miss. Const. § 144 (1890); Newell v. State, 308 So.2d 71 (Miss. 1975).
At this late date, there can be no doubt of the authority of this Court to promulgate and enforce rules of procedure. Newell v. State, 308 So.2d 71 (Miss. 1975). Southern Pacific Lumber Co. v. Reynolds, 206 So.2d 334 (Miss. 1968) announced the authoritative construction of the phrase "judicial power" in Section 144 of our Constitution to include:
the power to make rules of practice and procedure, not inconsistent with the Constitution, for the efficient disposition of judicial business. (206 So.2d at 335).
If this Court has any rule making power, the scope of that surely includes the procedural aspects of appeals to this Court. If there is any aspect of procedure that relates to the efficient disposition of judicial business, it is the setting and providing of times when actions with respect to lawsuit may or must be taken.
We have recent precedent for the exercise of this Court's rule-making power with respect to the timing of an appeal. MCA § 11-51-5 (1972) provides that an appeal may be perfected within 45 days after entry of the judgment or the decree complained of. Effective January 1, 1984, this Court exercised its rule making power and prescribed a 30-day time period following entry of judgment within which an appeal must be perfected. See Rule 48(b), Miss. Sup.Ct.Rules; Moran v. Necaise, 437 So.2d 1222 (Miss. 1983).
I recognize without hesitation that the traditional practice in this state has precluded interlocutory appeals in circuit court cases. The interlocutory appeals statute was long ago held to apply only to actions heard in chancery court. See, e.g., State, ex rel. Rice v. Large, 171 Miss. 330, 157 So. 694 (1934). The statute, by its terms, applies only to chancery courts. We have nevertheless consistently refused to allow interlocutory appeals from circuit court. See Woods v. Lee, 390 So.2d 1010 (Miss. 1980); State Tax Commission v. Clinton, 267 So.2d 312 (Miss. 1972), and cases cited in Justice Hawkins' dissent.
We did state recently in Stanton & Associates v. Bryant Construction Co., Inc., 464 So.2d 499 (Miss. 1985), that:
While it is conceptually possible that an interlocutory appeal may lie from the denial of a Rule 12(b)(6) motion, we expect that the cases will be rare indeed when the criteria for the granting of such an interlocutory appeal will be met. (Emphasis supplied).
(464 So.2d at 505).
There can be no doubt, generally speaking, but that there is great merit in the final judgment rule. This is the traditional rule enforced in every jurisdiction in this country to one extent or another. It proceeds on the premise that piecemeal appeals are not favored and that appeals ordinarily should be taken only from final judgments. Equally without fear of contradiction, I suggest that there are special and unusual cases wherein, by virtue of the nature of the action and the nature of the question presented on appeal, an interlocutory appeal might settle the controlling principles involved in a case and otherwise expedite the ultimate termination of the litigation and in consuquence avoid unnecessary expense or delay. Where these conditions are met, and their frequency will no doubt be even less in actions in circuit court than in chancery court, there is no reason on principle why an interlocutory appeal should not be allowed. Accordingly, *64 I would have this Court in this case declare forthrightly that any order or decree, interlocutory in nature, entered in a circuit court (or chancery court for that matter) which involves a controlling question of law as to which there is substantial grounds for difference of opinion and where an immediate appeal may settle the controlling principles of law and/or otherwise materially advance the ultimate termination of the litigation or likely avoid expense and delay to the parties, an interlocutory appeal to this Court should lie. I would overrule all of our prior cases which provide to the contrary.
One need look no further than the case at bar for an outstanding example of the wisdom of this proposed rule. The plaintiff asserted a cause of action against a worker's compensation insurance carrier relying upon a theory of recovery not heretofore expressly recognized in this Court. Indeed, under the Taylor case, there was reason for doubt whether plaintiff had any right assuming he can prove the allegations made in the complaint. The circuit court, however, overruled the insurance carrier's motion to dismiss for failure to state a claim. If no interlocutory appeal were available, the parties would have been forced into the position of litigating a novel claim in its entirety, such litigation no doubt attended by substantial expenditure of time and money. At the conclusion of the litigation and following entry of final judgment, of course, an appeal would lie under rules everyone accepts. But if on that appeal, the net effect of such action would have been that the time and money of the litigants and the circuit court spent in litigating the claim would have been wasted. To be sure, some expenditure of time and money is unavoidable in litigation. The point is that this risk of waste could be avoided. Our dockets may be crowded but they are not so crowded that we should consciously visit upon the citizens of this state  and the circuit courts of this state  such waste where it can reasonably be avoided.
PRATHER, ROBERTSON and SULLIVAN, JJ., join in this opinion.
NOTES
[1] Ms. Holland died subsequent to the appeal of this case, and the cause was revived by her estate.
[1] Mississippi Code Annotated section 71-3-37 (1972) of the Act provides for penalties for the failure to pay benefits and is further evidence that the legislature intended that the Act be the exclusive remedy as to all liability arising out of claims for benefits of an employer with respect to payments of benefits.
[1] The language in the majority could very well be appropriate. Facts of a case should give birth to the language, however, if it is ever appropriate. Speculations are excellent for law school classrooms, but should have limited application on this Court, in my view.

Indeed, the language in Taylor, supra, could in part be considered dicta. We had no specific facts in that case before us, but rather made broad strokes in an appeal dismissing a declaration. In that case, however, at least, it was necessary that we decide the appeal, because it was not interlocutory. Yet, the language in Taylor, based upon non-existent facts, may have gone beyond what was necessary, thus, in part, precipitating the problem of this case. Whether it did or did not go too far should be based upon actual facts before us.
[2] Having failed to address either the circuit judge's authority to grant or this Court's authority to entertain an interlocutory appeal under Miss. Code Ann. § 11-51-7 in any manner in its first opinion, following this dissent the majority added a final paragraph. In it they belatedly give as their reason for hearing the interlocutory appeal the parties raised no objection, and "because of the time, expense and effort expended by the parties," in a "supervisory capacity this action is warranted by this Court." They did not need to add they also are hearing it in order to write some new law. In any event the following observations are to answer the conclusion of the majority.
[1] When this case was originally decided on December 12, 1984, Justice F. Bowling was a member of the Court and voted with the majority. On January 11, 1985, Justice R. Anderson replaced J. Bowling. When the case was presented on Petition for Rehearing on May 6, 1985, J. Anderson wrote this specially concurring opinion.