# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-CA-01092-COA

CINDY WALLS                                                                    APPELLANT

v.

FRANKLIN CORPORATION AND EMPLOYERS INSURANCE OF
WAUSAU, A MUTUAL COMPANY                                                       APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/1999 |
| TRIAL JUDGE: | HON. HENRY L. LACKEY |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROY O. PARKER |
| ATTORNEY FOR APPELLEE: | JACKSON H. ABLES III |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| TRIAL COURT DISPOSITION: | ACTION DISMISSED |
| DISPOSITION: | REVERSED AND REMANDED-12/05/00 |
| MOTION FOR REHEARING FILED: | 12/19/2000; denied 2/13/2001 |
| CERTIORARI FILED: | 2/27/2001; granted 5/10/2001 |
| MANDATE ISSUED: | |

BEFORE KING, P.J., LEE, AND MYERS, JJ.

KING, P.J., FOR THE COURT:

¶1. Cindy Walls appeals the decision of the Chickasaw County Circuit Court dismissing her appeal for failure to exhaust administrative remedies. The circuit court found that Walls's claim of bad faith denial of workers' compensation benefits against Franklin Manufacturing Company (Franklin) and its carrier, Wausau Insurance Company (Wausau) should have been brought first before the Mississippi Workers' Compensation Commission (MWCC). Aggrieved by this finding, Walls raises the following issues: 1) whether the appellant has sufficiently pled a cause of action against the employer and carrier for bad faith, and 2) whether the trial court properly dismissed the appellant's claim for lack of jurisdiction.

## FACTS

¶2. Cindy Walls injured her back at Franklin Manufacturing Company in October of 1984. After referrals by a series of doctors, Walls was sent to Dr. William Brown for treatment in February of 1985. Dr. Brown performed a chemonucleolysis procedure at the L4-5 level. Over a year later, she received treatment from Dr. Thomas Turner, who performed a partial laminectomy at L-4 and a fusion. Walls was finally released in May of 1990 with a 20% physical impairment rating. After the surgery, a claim was filed on Walls's behalf with the MWCC. In a 1992 hearing held on the claim, the administrative law judge directed Franklin and Wausau to "pay for, furnish and provide . . . all reasonable and necessary medical services and supplies as

the nature of her injury or the process of her recovery may require as provided in Miss. Code Ann. § 71-3-15 (1972)." The Full Commission affirmed this award in February of 1993. Soon after, Walls began submitting her medical bills to her attorney, who submitted the bills to the attorney for Franklin. Franklin then forwarded the bills to Wausau for payment. This process often delayed Walls's receipt of medical expenses. Upon suggestion by Michael Soper, attorney for Franklin and Wausau, Walls was instructed to go directly to Wausau for payments.

¶3. From 1993 to 1996 Walls submitted her bills directly to Wausau and established a continuous relationship with Sylvia, one of the adjusters who approved most of Walls's prescriptions. Walls received several prescriptions for special air shoes over the course of her treatment. Walls purchased the special shoes on September 24, 1993, December 16, 1994, July 16, 1995, and on April 10, 1996. These shoes were paid for without question for several years. On another occasion, Wausau provided payment authorization for a gym set prescribed for Walls. Walls's physician later prescribed whirlpool baths to ease back pain. These baths were to be performed two to three times on a weekly basis. Walls reached an agreement with Sylvia, an adjuster she frequently communicated with, about installation of a whirlpool bath in her home. Walls opted for installation in her home because there was no place near her home to conduct the baths, and she wanted to save Wausau money. Walls submitted an estimate to Wausau on the cost of installation of the whirlpool bath. Based upon her understanding with Sylvia, Walls had the whirlpool installed. Before payments were received for the whirlpool bath and the last two pair of the air shoes, Wausau changed adjusters. Alan Diagrepont became the new adjuster for Walls's claims. Diagrepont notified Walls and her doctor that Wausau would not honor her claims for the whirlpool bath and the last two prescriptions for the air shoes submitted in 1995 and 1996. In an affidavit submitted by Diagrepont, he claimed to have no knowledge of Walls's demand for reimbursement for the special shoes, and that Walls failed to follow proper procedure in acquiring the whirlpool bath.

¶4. By June of 1997 Walls still had not been reimbursed for the air shoes or the whirlpool bath. She had demanded payment of the outstanding medical expenses several times, and no response or payment was made. In September of 1997, Walls filed a claim alleging bad faith refusal to pay medical benefits in Chickasaw County Circuit Court. Wausau had the case removed to federal court, which later remanded it back to the circuit court. Wausau then filed a motion seeking the jurisdiction of the MWCC. Wausau contested the necessity of the medical expenses claiming that the exclusivity of the Mississippi Workers' Compensation Act prevented Walls from seeking relief in the circuit court. In a motion to the MWCC, Wausau sought a determination of the reasonableness and necessity of Walls's medical treatment. The MWCC held this motion and others in abeyance pending a determination of jurisdiction by the circuit court or the federal court. The circuit court dismissed Walls's claim for failure to exhaust administrative remedies. Walls then perfected this appeal.

## ISSUES AND ANALYSIS

### I.

**Whether the appellant has sufficiently plead a cause of action against the employer and carrier for bad faith.**

¶5. Walls contends that because Franklin and Wausau denied payment of medical benefits for two pairs of air shoes and a whirlpool bathtub, failed to respond to demands for payment and offered no explanation for this denial, they engaged in willful and malicious behavior. According to Walls, this behavior amounted to

bad faith denial of medical benefits. Franklin and Wausau argue that there must be a determination of whether these medical supplies were reasonable and necessary. Such a determination must be conducted by the MWCC .

¶6. In cases of bad faith, a workers' compensation claimant may bring an action against a carrier, but the claimant must allege and prove the recognized elements of the claim. *Southern Farm Bureau v. Holland*, 469 So. 2d 55, 59 (Miss. 1984 )(citing *Reserve Life Insurance Company v. McGee*, 444 So. 2d 803, 808-09 (Miss. 1983)). "Where the wrong is intentional, malicious or calculated to cause intimidation, the claimant is entitled to another remedy [outside the Workers' Compensation Act]." *Holland*, 469 So. 2d at 58 (citing *Gibson v. National Ben Franklin Ins. Co.*, 387 A.2d 220, 223 (Me. 1978)).

¶7. In the case at bar, Franklin and Wausau were instructed to pay "all reasonable and necessary" medical expenses Walls incurred due to her back injury. Walls and several adjusters for Wausau established a distinct procedure for payment of her medical benefits. Instead of following regular procedure, which included seeking prior approval and confirmation from Wausau to get treatment from a particular doctor to receive payment for benefits, Walls would purchase medical supplies and then seek reimbursement. Because Walls had developed a relationship with several of the adjusters, her medical benefits were always paid. This method of receiving benefits changed when Alan Diagrepont was assigned to handle Walls's claims. Diagrepont advised Walls that her claims would no longer be honored in that manner. Despite approval by previous adjusters, Diagrepont refused to authorize payment for the installation of the whirlpool bathtub and the two pair of air shoes. Diagrepont stated that he had not received a prescription from a physician that the whirlpool bathtub was reasonable and necessary. After making several demands for payment and getting no response from Wausau or Franklin, Walls filed a claim for bad faith denial of medical benefits.

¶8. We hold that Walls has sufficiently pled an action for bad faith against Wausau and Franklin. The allegations that Wausau refused to pay for air shoes approved and paid for on prior occasions, questioned the reasonableness and the necessity of a whirlpool bathtub when the MWCC had fully adjudicated the issue of payment of medical expenses, and refused to respond to demands for payment might possibly be determined by a jury to be bad faith.

## II.

### Whether the trial court properly dismissed the appellant's claim because of lack of jurisdiction.

¶9. Walls contends that the circuit court erred when it dismissed her bad faith claim against Franklin and Wausau for lack of jurisdiction. The bad faith claim, which is an intentional tort, was properly filed in the circuit court. Because the bad faith claim is an intentional tort, it is within the subject matter jurisdiction of the circuit court. *Luckett v. Mississippi Wood, Inc.*, 481 So. 2d 288, 290 (Miss. 1985). The exclusivity provision of the Mississippi Workers' Compensation Act does not bar Walls's claim against Wausau or Franklin since the action was for an independent tort. *Id.*

¶10. Because we find that the circuit court had jurisdiction over Walls's bad faith claim against Wausau and Franklin, we reverse the decision of the circuit court.

¶11. **THE JUDGMENT OF THE CHICKASAW COUNTY CIRCUIT COURT DISMISSING**

**APPELLANT'S BAD FAITH CLAIM IS REVERSED AND REMANDED. APPELLEE IS ASSESSED WITH ALL COSTS OF THIS APPEAL.**

**BRIDGES, IRVING, LEE, MYERS, AND PAYNE, JJ., CONCUR. SOUTHWICK, P.J., DISSENTS WITH SEPARATE OPINION JOINED BY McMILLIN, C.J., MOORE AND THOMAS, JJ.**

SOUTHWICK, P.J., DISSENTING

¶12. In my view, this suit should be dismissed because the claimant failed to seek an administrative answer under the Workers' Compensation Act. Instead of exhausting administrative remedies, she evaded them. It is with respect that I dissent to the majority's views.

¶13. An employer is required to pay for medical expenses necessary for an injured employee. Miss. Code Ann. §71-3-15(1) (Rev. 2000). The Act recognizes that what is necessary can be disputed. By statutory command, the Workers' Compensation Commission established a medical provider fee schedule, utilization review and cost containment system. Miss. Code Ann. §71-3-15(3) (Rev. 2000). The purpose for the procedures is to "determine the reasonableness of the charges and the necessity for the services." *Id.* The majority finds that the employer-carrier refused to make payments after the Commission had "fully adjudicated the payment of medical expenses." However, all that had been adjudicated was that all necessary expenses were to be reimbursed. The unadjudicated question was whether these subsequently-arising expenses were necessary.

¶14. Also created as part of the fee schedule is a method of dispute resolution concerning medical fee reimbursement. Medical Cost Containment Rules provide that a carrier or employer may withhold any payment that it believes does not conform to the Commission guidelines. Mississippi Workers' Compensation Commission, Official Mississippi Fee Schedule, Cost Containment Rules III D (Eff. 1997). Once that occurs, the claimant can request a reconsideration. *Id.* at III E. If the claimant remains dissatisfied, there is the right to appeal to the Commission to resolve the dispute. *Id.* at IV.

¶15. Instead of utilizing these procedures, the claimant here argues that the lengthy and repeated refusals of the employer-carrier to pay the bill raise issues of bad faith. The only thing that I find raised is refusal by the claimant to employ the proper procedures. The fee schedule states that the "foundation of all reimbursement" of medical services and supplies is the "concept of medical necessity." *Id.* at General Guidelines I. Workers' compensation claims are not processed through the claimant saying or writing that a certain charge is reasonable, the employer-carrier responding that it is not, and then the mere passage of time and perhaps repetitions in that exchange creating bad faith questions. Further, it is not for the employer carrier to seek a resolution but for a dissatisfied claimant. The claimant erroneously states that if the employer-carrier disagreed with the charges, it should have sought a Commission decision. That makes no sense. If the claimant accepts the refusal to pay as valid, neither side seeks a dispute resolution. If the claimant disagrees, the matter can be brought to the Commission.

¶16. The Commission's General Rules address the agency procedures for hearing these appeals. General Rule 12 states that upon hearing an appeal of a dispute over a specific charge, a designated Commission representative will review the charge within thirty days. Mississippi Workers' Compensation Commission General Rule 12 A. Telephone conferences, hearings, receipt of documentation, all are possible responses by the representative. Rule 12 B & C. If the dispute is over a medical care determination, that will be

resolved by a peer review consultant. Rule 12 D. Someone dissatisfied with the determinations has twenty days to request a hearing before an Administrative Judge. Rule 12 E & F.

¶17. In summary then, a relatively streamlined procedure exists at the Commission to resolve the very issue that the claimant here is making into a bad faith claim. The parties go first before a Commission representative. If that proves unsatisfactory to someone, then an appeal can be taken to an administrative judge. A further appeal may later be taken to the Full Commission.

¶18. This is all quite straight-forward. The failure to exhaust administrative remedies provided by statute or regulation is normally fatal to a claimant who seeks a short-cut to court. The general rule applicable to all decisions entrusted to administrative agencies is that a claimant must first utilize the administrative remedies. *State v. Beebe*, 687 So.2d 702, 704 (Miss. 1996). That rule was first applied many years ago to workers' compensation law. *Everitt v. Lovitt*, 192 So.2d 422, 426 (Miss. 1966).

¶19. What the majority relies upon is specific case law dealing with bad faith refusal to pay by workers' compensation carriers. With respect, for those cases to bear the weight that the majority puts on them would require that they stand for the proposition that exhaustion is not necessary if the agency remedies are ignored by a claimant long enough. This then creates factual issues as to bad faith because of the *continual* failure of the insurance carrier to make payment. If such were the rule, then the whole purpose of having agency dispute resolution is thwarted. A carrier may be wrong in its refusal to pay, but saying there has been error is for the agency in the first instance.

¶20. So I turn to some of the cases that are said to justify what has been done here. The earliest case to address bad faith refusal to pay in the worker's compensation arena appears to have been *Southern Farm Bureau Casualty Ins. Co. v. Holland*, 469 So. 2d 55 (Miss. 1984). What we know of the underlying facts is simply that Holland was injured in October 1977, benefits were paid until July 1979, for about two years none were paid based "on medical advice," and then payments resumed after a Commission order of September 8, 1981. The bad faith claim was then brought as an independent suit in circuit court. *Id.* at 56. Justice Lenore Prather wrote for the Court that the exclusive remedy of the compensation statutes did not apply and the claimant was entitled to try to prove "intentional, tortious conduct of Farm Bureau in refusing to pay benefits" with no arguable basis. *Id* at 59. Unlike this case, the claimant had gone to the Commission after the interruption of benefits in 1979 and received an order requiring the carrier to make payments. The circuit court litigation followed that completion of the administrative remedy procedures. This means that the circuit court did not have to decide whether in fact the benefits were properly owing -- the Commission had already decided that.

¶21. The next case seems to create the potential for a bad faith claim if the employer does not advise a worker "that it would furnish him with medical treatment until his workers' compensation claim was filed" and the employer does not provide the worker with any benefits. *Luckett v. Mississippi Wood, Inc.,* 481 So.2d 288, 289 (Miss. 1985). The alleged bad faith was a "refusal to honor their [employer and carrier] obligations" under the statute. *Id* at 289. The claimant filed a motion to controvert with the Commission about seven months after the alleged injury. By statute, an employer must begin payments of benefits within fourteen days of learning of the injury unless the employer contests its liability. Miss. Code Ann. § 71-3-37 (1) (Rev. 2000). Thus the bad faith in *Luckett* was the alleged failure of the employer to pursue its obligations either to pay or controvert. Such an obligation on the employer does not appear in any other case that I have found, nor is it entirely consistent with the fact that there is a two year statute of limitation

during which a claimant may file for benefits. Miss. Code Ann. § 71-3-35(1). Indeed, the employee has the right and is usually the person who files the petition to controvert, not the employer. The Commission's own form Petition to Controvert is for use by claimants, not employers. Form B-5, 11. Regardless, in *Luckett* proceedings were begun in the Commission before the bad faith suit was brought.

¶22. A clearer set of facts arises in the next bad faith workers' compensation appeal. There the claimant and the employer-carrier had "contracted to settle" the compensation claim, but the employer-carrier then allegedly intentionally refused to fulfill its duties under that settlement. *McCain v. Northwestern National Ins. Co.*, 484 So. 2d 1001 (Miss. 1986). This suit was for breach of the contract of settlement. The meaning of the contract and the legal issues surrounding its breach were not something within the Commission's jurisdiction, and thus no return to the Commission would be needed. *Id*. at 1002.

¶23. The final case relied upon by the claimant here is factually clear as well. There, final Commission action on the claim had occurred, which had followed a remand from the Supreme Court. *Leathers v. Aetna Casualty & Surety Co*., 500 So. 2d 451, 452 (Miss. 1986). The entire Commission process had taken ten years. Only after it was over with final determination of what benefits were owing was the bad faith claim brought. *Id.*

¶24. None of these precedents has held that a court may decide whether certain benefits are properly owing before the Commission itself has made that determination. *Luckett* is unclear as to what was resolved at the Commission before the bad faith suit, so even it does not contain such a holding. Walls has sought a determination that the defendants failed in bad faith to pay something that the Commission has yet to find needs to be paid at all. There is no precedent for that, and indeed the necessary precedent for us to apply is that the expertise of an administrative agency must be exhausted before the subject matter should be reviewed by a court.

¶25. The importance of the application of that expertise was obvious in a recent appeal deflected to this Court. The Commission decided that the employer-carrier should pay for a new handicap-equipped van instead of paying the much lower charges of retrofitting the claimant's personal vehicle. *Georgia-Pacific Corp. v. James*, 733 So.2d 875, 876 (Miss. Ct. App. 1999). A review of the record in that appeal reveals that the claimant turned to the dispute resolution procedures after the employer-carrier rejected the request. Those are the same procedures that were shunned by Walls in our case. Had the claimant, James, without first exhausting administrative remedies, brought a bad faith claim for failure to purchase the van, his approach would have been the same as taken by Walls. The majority's ruling today would have permitted James just to sue the carrier for bad faith without ever acquiring from the Commission a ruling on whether the van was a necessary medical expense. The statute that we quoted in *James* provides that an "employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require. . . ." Miss. Code Ann. § 71-3-15(1) (Rev. 2000). As the van in *James*, the necessity of the whirlpool here was something for the Commission to consider initially.

¶26. An employee's multiple requests to pay, all met by employer refusals, are not an alternative to the exhaustion obligation. Instead, they prove that the exhaustion obligation is being ignored.

¶27. "Chaos" is too strong a word, but I find at least that inefficiency, confusion, and the potential for intentional avoidance of administrative procedures in hopes of a large bad faith award result from the majority's holding. The Commission was given a mandate to establish rules to review medical bills as to

whether they are reasonable and necessary. Miss. Code. Ann. § 71-3-15(3) (Rev. 2000). Those rules were adopted. We must enforce them.

**McMILLIN, C.J., MOORE AND THOMAS, JJ., JOIN THIS SEPARATE OPINION.**