**Joe Allen TONEY, Plaintiff,**

v.

**LOWERY WOODYARDS AND EMPLOYER'S INSURANCE OF WAUSAU, a Mutual Company, Defendants.**

**No. CIV. 3:03CV120LN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

June 2, 2003.

John G. Jones, Jones & Funderburg, Jackson, MS, Wesla Sullivan Leech, Mendenhall, MS, for Plaintiff.

Bobby L. Dallas, Sessums, Dallas & Morrison, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of plaintiff Joe Allen Toney to remand this case to the Circuit Court of Simpson County, Mississippi, from which it was removed by defendant Employer's Insurance Company of Wausau (Wausau). Wausau has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is not well taken and should be denied.

Toney filed suit in the Circuit Court of Simpson County, Mississippi, seeking compensatory and punitive damages from defendant Waussau and his former employer, Lowery Woodyards (Lowery), based on their alleged bad faith refusal to pay workers' compensation benefits which Toney contends are due and owing. Waussau promptly removed the case on the basis of diversity jurisdiction under 28 U.S.C. § 1332, contending that because Lowery, whose citizenship is not diverse from plaintiff's,[1] had no involvement in the adjustment of Toney's claim for benefits or in the decision to discontinue payment of workers' compensation benefits, plaintiff has no possibility of recovery against Lowery, who thus must be found to have been fraudulently joined. Waussau maintains that since it is a Wisconsin corporation, and hence is of diverse citizenship from plaintiff, and further since the amount in controversy plainly exceeds $75,000, the requisites for diversity jurisdiction are met, so that the case was properly removed.

In his motion to remand, plaintiff argues that Mississippi law clearly recognizes his right to bring this action against his employer for bad faith denial of workers' compensation benefits. In the court's opinion, while it is certainly true as a general proposition that there exist circumstances in which Mississippi law recognizes a cause of action against an employer for the denial or nonpayment of workers' compensation benefits, such circumstances

---

1. Both are Mississippi citizens.

do not exist in the case at bar, and remand is not warranted.[2]

■ There is no dispute as to certain relevant facts giving rise to this lawsuit, and bearing on the present motion. In particular, the record reflects that on February 2, 1996, while in the course and scope of his employment as a truck driver for Lowery, Toney slipped while getting out of a truck and sustained injuries to his neck, back and shoulders.[3] Toney reported his injury to Waussau, Lowery's workers' compensation insurer, which, upon notification, began and continued providing medical and indemnity benefits to plaintiff over the next five years, during which time plaintiff was treated by a series of physicians, as well as a psychologist, Dr. Ed. Manning, who treated plaintiff for two years before referring him to a psychiatrist, Dr. Frank A. Kulik, in August 1998. Eventually, plaintiff came under the care of Dr. Felix Savoie, an orthopaedic surgeon who treated (and continues to treat) plaintiff for his shoulder and arm injuries.

According to plaintiff's complaint, on January 25, 2001, Dr. Savoie issued a report stating that Toney had reached maximum medical recovery with respect to the injuries he had sustained to his left shoulder and arm, and assigned a 20% impairment rating to that shoulder. Plaintiff alleges that although Dr. Savoie gave no opinion at that time as to the injury to Toney's right shoulder, and in fact, stated in his report that Toney "may require surgical intervention" on the right upper extremity in the future, and despite the fact that Toney remained under the care of Dr. Kulik for psychological problems relating to his underlying injury, Waussau and Lowery terminated benefit payments to Toney without any legitimate or arguable reason and in direct contravention of their duties under Mississippi's workers' compensation act.

Plaintiff states that in the latter part of 2001, he secured an attorney, who began demanding payment of benefits. He charges in his complaint that notwithstanding clear documentation of continuing medical treatment and entitlement to indemnity benefits under the Act, Waussau refused further payment—other than for a mere two weeks of physical therapy recommended by Dr. Savoie. Accordingly, on January 14, 2002, Toney filed with the Workers' Compensation Commission a Petition to Controvert, followed by a Motion to Compel Medical Treatment, in which he alleged entitlement to continuing medical

---

**2.** Toney has also argued that the removal was defective because Lowery did not join in the removal petition, and that removal of this action is improper pursuant to 28 U.S.C. § 1445(c), which precludes removal of any case arising under a state's workers' compensation laws. Neither contention has merit. First, there is no requirement that a fraudulently joined party consent to removal, *see Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 815 (5th Cir.1993) (consent of defendants who have been fraudulently joined not needed for removal). Further, an action alleging bad faith refusal to pay workers' compensation benefits does not arise under Mississippi's workers' compensation statutory scheme, but under Mississippi's general tort law and, accordingly, was not intended by Congress as being within the ambit of 28 U.S.C. § 1445(c).

*See Patin v. Allied Signal, Inc.*, 77 F.3d 782, 790 (5th Cir.1996) (holding "that the breach of the duty of good faith and fair dealing by a carrier of workers' compensation insurance is an independent tort created by—and thus 'arising under'-the common law, and is at most 'related to' the workers' compensation laws that create the basic benefit rights of the covered employee and those claiming through him.").

**3.** Evidently, while there is no dispute that Toney sustained injury to his right shoulder as a result of this incident, as indicated *infra*, Waussau has questioned Toney's assertion that injury to his left shoulder resulted from the 1996 fall.

treatment as prescribed by his physicians as well as to indemnity, based on the medical opinion of his physicians that Toney remained in a temporary or permanent total disability status.

Following a hearing, an order compelling medical treatment was entered on February 25, 2002, ordering that the employer and carrier provide medical treatment by Dr. Kulik; continued physical therapy as ordered by Dr. Savoie; and all prescriptions properly prescribed to Toney by his treating physicians. The extent to which payments were made following, and in accordance with the commission's order is not entirely clear from the record; it does appear that Wausau paid for some of the treatment required by the order. But according to plaintiff, "defendants" refused payment for other treatment clearly required by the order (which refusal included their failure to approve surgery Dr. Savoie opined was needed), and further refused to reinstate indemnity payments, despite an earlier opinion by Dr. Kulik that Toney was permanently disabled from a psychiatric standpoint and despite Dr. Savoie's June 2002 deposition testimony that plaintiff needed surgery on his right shoulder and was *not* at maximum medical recovery as to that injury. Toney thus filed this action on December 20, 2002 against Lowery and Wausau alleging bad faith denial and delay of benefits.

■ To establish fraudulent joinder, Waussau must prove that plaintiff has no reasonable possibility of establishing a cause of action against Lowery in state court. *Travis v. Irby,* 326 F.3d 644, 647 (5th Cir.2003) (citing *Griggs v. State Farm Lloyds,* 181 F.3d 694, 698 (5th Cir.1999)); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir.2002). When determining whether such a reasonable possibility of establishing a cause of action exists, the court may "pierce the pleadings" and consider "summary judgment type evidence such as affidavits and deposition testimony." *Cavallini v. State Farm Mutual Auto Ins. Co.,* 44 F.3d 256 (5th Cir.1995). In so doing, the court must resolve all *disputed* questions of fact and all ambiguities in the controlling state law in favor of plaintiff. *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990). "[I]f the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the in-state defendant," then removal is proper and remand will be denied. *Badon v. R J R Nabisco Inc.,* 224 F.3d 382, 390 (5th Cir.2000). That is, for example, if the defendant presents summary judgment-type evidence to show that plaintiff's allegations in his complaint are unfounded as a matter of fact, then the plaintiff, to secure remand, "may not rest on the mere allegations or denials of [his] pleadings," *Beck v. Texas State Bd. of Dental Examiners,* 204 F.3d 629, 633 (5th Cir.2000), or rely on conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant to show that the defendant was not fraudulently joined, *Badon v. R J R Nabisco Inc.,* 224 F.3d 382, 394 (5th Cir. 2000); *see id.* 224 F.3d at 393–94 (stating, " '[W]e resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.'* ") (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)) (Emphasis *Badon* ).

■ The court notes at the outset that plaintiff has not alleged in his complaint that Lowery was actually actively involved

in the adjustment of his claim for benefits, or that Lowery made or even participated in decisions with respect to the payment (or nonpayment) of benefits. Nevertheless, he insists that under Mississippi's Workers' Compensation Act, Lowery, as his employer, was subject at all times to a non-delegable duty to ensure payment of all benefits due him under the terms of the Act, and for its failure to fulfill that duty, has committed an independent tort against Toney.[4] The court has considered plaintiff's reasoning in support of his contention in this regard, and has carefully reviewed the authorities upon which he relies in crafting his argument, but finds that it must reject plaintiff's position.

■ It is best to first identify precisely what is at issue in this case, in light of the facts that are known. To the point, although plaintiff insinuates in his memoranda relating to his motion that Lowery may have taken part in decisions by Waussau on his claim, or that Lowery was at least aware or became aware that Waussau was not paying Toney the benefits, or all the benefits to which he was entitled under the Workers' Compensation Act, the evidence of record is to the contrary. Waussau has submitted an affidavit of William Lowery, owner and operator of Lowery Woodyards, that Toney's claim "has been handled entirely by Waussau," and that throughout the claims handling, Waussau has not provided Lowery with any information regarding the status of the claim or otherwise advised Lowery of any disputes that may have arisen regarding Toney's claim.[5] According to Mr. Lowery, he thought that Toney's claim "had all been settled" until he received a copy of the Petition to Controvert in early 2002, followed by a subpoena to appear at the hearing. Mr. Lowery states that he had no prior knowledge of any problem relating to Toney's claim, and that although he went to Jackson for the hearing, he was not present in the hearing room and had no knowledge of what transpired at the hearing. He was informed after the hearing by Waussau's attorney, in a conversation Toney's and Waussau's attorneys, that Toney had said that Lowery owed him $30,000, but when Mr. Lowery contacted Toney to ask him about this, Toney said that Lowery owed him nothing, and that Waussau had failed to pay some of his prescription bills. According to his affidavit, Mr. Lowery never heard anything further from anyone re-

4. The complaint recites:

In discharging obligations to plaintiff imposed by the Act, defendant/employer Lowery Woodyards and defendant/carrier Waussau are alter-egos, jointly and severally liable to the plaintiff for medical and indemnity benefits as required by law under the undisputed and admitted facts of plaintiff's underlying compensation claim. The defendant/employer Lowery Woodyards may purchase, and has at all times relevant purchased from Waussau, workers' compensation insurance coverage to provide benefits owing under the Act, but such coverage does not relieve the defendant/employer of in every way fulfilling the non-delegable duties imposed by the Act to provide medical and indemnity benefits to a plaintiff/claimant in an admitted-compensability, lost-time case. Such actions are suffi-

cient to constitute an independent tort and remove this cause of action from the exclusivity-of-liability provisions of the Act.

5. Plaintiff argues that statements by Lowery that Waussau contacted Lowery a couple of times in the 1998 to 1999 time frame to determine whether Lowery had any work for plaintiff demonstrate Lowery's involvement in the handling of Toney's claim. In the court's view, this shows nothing, other than perhaps the fact that Lowery knew in 1998 and 1999 that Waussau was paying benefits to Lowery based on his then-existing disability. This does not tend to show that Lowery knew, or had reason to know, that Waussau was not paying benefits in accordance with its statutory and contractual undertaking, or that Lowery was participating in any way in the adjustment process.

garding the matter and assumed that whatever dispute had arisen between Waussau and Toney had been resolved, that is, until he learned of the lawsuit. Mr. Lowery declares,

> I have no knowledge of Waussau's investigation or handling of Joe Toney's claim for workers' compensation benefits or the reasons why any of his workers' compensation benefits may have been denied. Waussau did not consult with me regarding Mr. Toney's claim or ask for my advice, recommendation or input before denying any such claim. Neither I nor Lowery Woodyards had any involvement whatsoever in any decision to deny any workers' compensation benefits to Joe Toney.

Waussau has submitted the affidavits of its adjuster and attorney who confirm Mr. Lowery's statements in this regard. For his part, in response to Waussau's evidence on this issue, plaintiff has presented no evidence to show that Mr. Lowery, or anyone with Lowery Woodyards, had any notice or knowledge regarding Waussau's handling of Toney's claim for benefits or that there was any problem with or dispute concerning Toney's claim for benefits until the Petition to Controvert was filed in January 2002, nor is there proof from plaintiff that at any time after the Commission's order was entered but before this suit was filed Lowery knew or had reason to know that benefits had not been paid in accordance with the order or otherwise.[6] The issue, then, is whether an employer, such as Lowery, is potentially lia-

ble under Mississippi law for bad faith failure to pay benefits because the employer's workers' compensation insurance carrier, without the employer's knowledge, has failed to pay benefits due and owing the injured employee.[7] In the court's opinion, for the reasons which follow, it is not.

■ The Mississippi Workers' Compensation Act mandates that "[e]very employer to whom this chapter applies shall be liable for and shall secure payment to his employees of the compensation payable under its provisions." Miss.Code Ann. § 71–3–7. Section 71–3–75(1) provides the manner in which payment must be secured, stating:

> *Insurance of Liability.* An employer liable under this chapter to pay compensation shall insure payment of such compensation by a carrier authorized to insure such liability in this state unless such employer shall be exempted from doing so by the commission.[8]

As Waussau points out, once an employer secures the payment of workers' compensation by purchasing insurance, the employee's claims are thereafter to be processed by the insurer and paid directly to the employee or his medical provider. *See* Miss.Code. Ann. § 71–3–77(1). Indeed, "[w]hen a carrier knows of an insured's employee's injury, and the insured does not controvert the injury, the carrier has a duty to begin paying benefits directly to the injured employee." *Rogers v. Hartford Acc. & Indem. Co.,* 133 F.3d 309, 313

---

**6.** The court recognizes that there are statements in plaintiff's briefs to the effect that Lowery's attorney may have contacted Lowery from time to time about Waussau's nonpayment of the claim. But these statements do not constitute *evidence,* of which there is none to support the suggestion that Lowery knew what was happening at any time on Toney's claim.

**7.** For present purposes only, the court assumes that Waussau failed to pay benefits that are and were clearly due Toney under the Act.

**8.** As the parties recognize, § 71–3–75(2), which sets forth the requirements for qualifying as a self-insurer, is not applicable to this case.

(5th Cir.1998) ("The duty of the carrier to pay benefits is owed by the carrier to the injured employee.").

Nevertheless, although a duty to pay benefits is clearly placed on the carrier, plaintiff's position in this case, in a nutshell, is that under the Workers' Compensation Act, the ultimate obligation to provide benefits never leaves the employer, i.e., is non-delegable, regardless of whether or not the employer secures insurance coverage. In this regard, plaintiff argues that although as the cited statute provides, an employer may "secure" payment of benefits by purchasing insurance, the mere fact that it has secured workers' compensation coverage does not relieve it of the responsibility to an injured employee under the Act. On the contrary, he urges, the statute requires not only that the employer "secure" coverage, but makes the employer itself "liable for" the payment of compensation benefits, and, he submits, consistent with this duty, the law makes the employer and carrier alter-egos in carrying out their responsibilities to provide compensation benefits. However, the court does not read the authorities upon which plaintiff relies as supporting his position.

For example, in *Dawson's Dependents v. Delta W. Exploration Co.*, 245 Miss. 335, 147 So.2d 485 (1962), the court held that the employer who had allowed its workers' compensation insurance to lapse was estopped to deny coverage for its employee's death. *Id.* at 343, 147 So.2d 485. The court did not hold, or so much as intimate, that an employer remains liable for the payment of benefits even where it has fulfilled its statutory obligation to secure the payment of compensation by purchasing insurance coverage, and plaintiff has identified no case which has so held.

Nor is there support in the Workers' Compensation Act, or in the case law, for the proposition that an employer which itself is free of any wrongdoing can be held liable on an alter-ego theory for its carrier's bad faith failure to pay benefits. The law, in fact, is to the contrary. In *Southern Farm Bureau Casualty Insurance Company v. Holland*, 469 So.2d 55 (Miss. 1984), the Mississippi Supreme Court recognized an employee's right to sue his employer's workers' compensation carrier for bad faith denial of benefits which, the court explained, amounted to an intentional tort which was not barred by the Act's exclusivity of liability provision. In reaching its decision that the carrier could be sued, the court reasoned that "in committing intentional torts, the insurance carrier ceases to be the 'alter ego' of the employer. Rather, the carrier is involved in an independent relationship with the employee when committing such tortious acts." *Id.* at 58.[9]

 In *Luckett v. Mississippi Wood, Inc.*, 481 So.2d 288, 290 (Miss.1985), the court extended *Holland* "to include a bad faith refusal action against the employer, as well as the carrier," *id.* at 290, and held that the employee may recover against the employer, just as he can the carrier, "if he can prove his claim," *id.* To prove his claim against the employer, the employee would have to show, as he would to prove a claim against the carrier, that there has been "(1) an intentional refusal by the [employer] to pay with reasonable promptness the insured's claim; and, (2) the ab-

**9.** Plaintiff argues that although the alter-ego relationship may cease when the carrier commits an independent tort, such as a bad faith denial or delay in payment of benefits, that alter-ego relationship continues for other purposes. The court discerns no basis for this conclusion, in light of the court's holding in *Holland* that the alter-ego relationship between those entities "ceases" when the carrier commits an independent tort.

sence of any arguable reason for the defendant's refusal to pay with reasonable promptness." *Blakeney v. Georgia Pac. Corp.,* 151 F.Supp.2d 736, 741 (S.D.Miss. 2001) (citing *Blue Cross & Blue Shield of Miss., Inc. v. Campbell,* 466 So.2d 833, 847 (Miss.1984)). In this case, there can be no such showing against Lowery, which the uncontroverted evidence demonstrates had no knowledge that Toney's claim was not being properly paid.

Moreover, Toney has submitted no evidence to support his apparently alternative argument that "he has stated a claim individually by arguing that Lowery Woodyards, through correspondence, formal pleadings and commission hearings was requested to pay benefits and failed." As Toney has failed to submit even a scintilla of evidence that Lowery conspired with Wausau to deny Toney's benefits in bad faith or intentionally refused to pay Toney's claim, Waussau has sustained its burden of demonstrating that no reasonable possibility of recovery exist against Lowery.

In summary, the court rejects as unfounded as a matter of law plaintiff's position that the employer is charged with knowledge of, and resulting liability for the actions of its workers' carrier, even if the employer has not itself actively participated in the acts alleged to constitute malfeasance or bad faith. It follows, in light of the unrefuted record evidence in the case at bar, that there is no viable basis for plaintiff's claim against Lowery. Lowery has thus been fraudulently joined, and will be dismissed. The remaining parties are of diverse citizenship, and the amount in controversy exceeds $75,000.

Accordingly, it is ordered that plaintiff's motion to remand is denied.