CHANDLER, Justice,
dissenting:
¶ 21. With respect for the majority, I would reverse and render the judgments against Gallagher Bassett. I would find that there was insufficient evidence of gross negligence, malice, or reckless disregard for the rights of Malone to support the verdict in his favor against Gallagher Bassett. I would further find that, under the facts presented, there was no legal theory that enabled Nabors to recover damages from Gallagher Bassett for breach of contract. Because the evidence presented at the trial was insufficient to support the verdicts, a new trial is unwarranted.
¶ 22. Gallagher Bassett specifically challenged the sufficiency of the evidence *307 as to Malone’s claim with its motion for a directed verdict at the close of evidence, and as to Nabors’s claim with its motion for a JNOV. The denial of a directed verdict and the denial of a motion tor a JNOV are reviewed under the same standard. Tupelo Redev. Agency v. Gray Corp., Inc., 972 So.2d 495, 514 (Miss.2007). This Court has stated:
The standard of review for the denial of a directed verdict and a judgment notwithstanding the verdict is the same. Ala. Great S. R.R. Co. v. Lee, 826 So.2d 1232, 1235 (Miss.2002). “This Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference[s] that may be reasonably drawn from the evidence.” Id. at 1235 (quoting Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997)). “If the evidence is sufficient to support a verdict in favor of the non-moving party, the trial court properly denied the motion.” Henson v. Roberts, 679 So.2d 1041, 1044-1045 (Miss.1996) (citations omitted). In other words, this Court considers “whether the evidence, as applied to the elements of a party’s case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated.” White v. Stewman, 932 So.2d 27, 32 (Miss.2006).
Spotlite Skating Rink, Inc. v. Barnes ex rel. Barnes, 988 So.2d 364, 368 (Miss.2008).

1. The Workers’ Compensation Act and the tort of bad-faith failure to pay workers’ compensation benefits.

¶ 23. A review of pertinent provisions of the Mississippi Workers’ Compensation Act and of our bad-faith law is warranted. The Act provides that compensation is payable for “disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease.” Miss.Code Ann. § 71-3-7 (Rev. 2000). The first installment of compensation becomes due on the fourteenth day after the employer has notice of the injury, but an employer disputing the right to compensation may file a petition to controvert with the Commission on or before the day the first installment is due. Miss. Code Ann. § 71-3-37(2), (4) (Rev.2000). Automatic penalties for late payments are assessed in the amount of ten percent for payments not made pursuant to an award, and twenty percent for payments made pursuant to an award. Miss.Code Ann. § 71-3-37(5), (6) (Rev.2000).
¶ 24. Section 71-3-9 of the Mississippi Workers’ Compensation Act makes the Act the exclusive remedy available to an employee who has suffered a work-related injury. Miller v. McRae’s, Inc., 444 So.2d 368, 370 (Miss.1984). Section 71-3-9 provides:
The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury *308 was due to the contributory negligence of the employee.
Miss.Code Ann. § 71-3-9 (Rev.2000). Regarding the exclusivity provision, it has been stated that:
Three main themes make up the “compensation principle” that underlies workers’ compensation laws. The employer provides benefits for work injuries without regard to fault; the benefits are limited to those prescribed in the statute, and the employee gives up a common law tort claim for the compensable injury against the employer in exchange for the employer’s providing the no-fault benefits.
John R. Bradley & Linda A. Thompson, Mississippi Workers’ Compensation § 11:1 (2007).
¶25. In Taylor v. U.S. Fidelity & Guaranty Co., 420 So.2d 564 (Miss.1982), this Court reviewed a trial court’s dismissal of an employee’s lawsuit against a carrier for bad-faith delay in paying workers’ compensation benefits. The complaint had alleged that the carrier “negligently, carelessly, wrecklessly [sic], willfully and hazardously [sic], failed, refused and neglected to process legitimate medical claims ...,” causing mental distress and exacerbation of physical pain. Id. at 564. The Court determined that the Legislature had intended that a tort action of this kind be subject to the exclusivity clause. Id. at 566.
¶ 26. In Southern Farm Bureau Casualty Insurance Co. v. Holland, 469 So.2d 55, 59 (Miss.1984), this Court limited Taylor by finding that the Act’s exclusivity clause does not bar an injured worker’s action against a workers’ compensation insurance carrier for the commission of an intentional tort. Holland had alleged that she had suffered mental distress caused by the carrier’s termination of her benefits, that the carrier had terminated her benefits in order to force an inadequate settlement of her claim, and that the carrier’s actions amounted to tortious breach of contract, breach of fiduciary duties, and an intentional infliction of emotional distress. Id. Relying upon Taylor, the carrier argued that the action was barred by Section 71-3-9. Id. This Court distinguished Taylor, stating:
A review of the Taylor record discloses without question that the pleading sounds in negligence. No intentional tort is alleged, as is present in the allegation of this case. The rule in Taylor is accordingly limited to cases where the injured worker attempts to sue the carrier for negligent refusal to pay. In the case sub judice the pleading alleges the withholding of compensation for no legitimate or arguable reason and in an effort to force a settlement for an inadequate amount, harassment regarding an auto insurance policy issued by the same company, refusal to pay medical bills, using economic pressure to force a settlement, all such acts with “grossness and recklessness” as to evince utter indifference to the plaintiff. The comparison of the pleading factually distinguishes the cases. This Court, therefore, concludes that Taylor does not control this case and has no application to cases alleging independent, intentional torts between a worker and the employer’s compensation carrier.
Id. at 57. The Court recognized several reasons that actions against the carrier are barred when based on negligence, but not when based on intentional conduct: (1) a carrier’s intentional failure to pay workers’ compensation benefits does not arise out of the employee’s work-related injury, rather, it is independently tortious conduct by the carrier; (2) a carrier is not the alter ego of the employer when the carrier’s intentional conduct is alleged; (3) the statutory *309 penalties were intended as the exclusive remedy for claims not promptly paid by the carrier, not for intentional conduct; and (4) the statutory penalties are inadequate to deter carriers from intentional wrongdoing. Id. at 58.
¶ 27. Since Holland, the parameters of a common-law action for bad-faith nonpayment of workers’ compensation benefits have become well-established. In Luckett v. Mississippi Wood, Inc., 481 So.2d 288, 290 (Miss.1985), the Court expanded Holland to permit a bad-faith suit against an employer as well as a carrier. In McCain v. Northwestern National Insurance Co., 484 So.2d 1001, 1002 (Miss.1986), the Court held that “[t]he same rules applicable to health, fire, casualty, accident, and other insurance policies are likewise applicable to workers’ compensation insurance carriers.” Punitive damages are available against an insurer that denies a claim without a legitimate or arguable reason, and acts with malice, gross negligence, or reckless disregard for the rights of others. Caldwell v. Alfa Ins. Co., 686 So.2d 1092, 1095 (Miss.1996).
¶ 28. The Court has stated that, to succeed on a bad-faith claim, a workers’ compensation claimant must show that the employer or carrier lacked “a legitimate or arguable reason to deny the benefits,” and “that the denial constituted a willful or malicious wrong in disregard for [the claimant’s] rights.” Miss. Power & Light Co. v. Cook, 832 So.2d 474, 479 (Miss.2002). Where there was a legitimate or arguable reason to delay or deny benefits, there is no basis for an award of punitive damages. Id. However, “the absence of an ‘arguable reason’ does not necessarily establish that the insurer acted with malice or with gross negligence or reckless disregard for the insured’s rights.” Caldwell, 686 So.2d at 1098 (Miss.1996) (quoting Blue Cross & Blue Shield of Miss. v. Maas, 516 So.2d 495, 497 (Miss.1987)). This is because “we have repeatedly held that ‘punitive damages are not mandated by the absence of an arguable reason ... because the denial of the claim could be the result of honest mistake or oversight — ordinary or simple negligence.’ ” Id. (quoting State Farm Fire and Cas. v. Simpson, 477 So.2d 242, 250 (Miss.1985)).
¶ 29. The Court has specifically set out the standard applicable to a bad-faith action against an insurance adjuster for nonpayment of claims. Bass v. California Life Ins. Co., 581 So.2d 1087, 1090 (Miss.1991). An adjuster’s relationship with the insured is purely contractual; it owes the insured no fiduciary duty. Id. (quoting Dunn v. State Farm Fire & Cas. Co., 711 F.Supp. 1359 (N.D.Miss.1987)). Rather, an adjuster’s duty is “to investigate all relevant information and ... make a realistic evaluation of a claim.” Id. An adjuster can be liable for conduct constituting malice, reckless disregard for the rights of the insured, or gross negligence. Id. “However, an adjuster is not liable for simple negligence in adjusting a claim.” Id. Thus, like an employer or carrier, an adjuster cannot be held liable for bad faith when the conduct at issue amounts to ordinary or simple negligence. This Court applied this standard in Gallagher Bassett v. Jeffcoat, 887 So.2d 777, 786 (Miss.2004), to find that a claims adjuster’s delay in paying uninsured motorist benefits due to her unfamiliarity with Mississippi insurance law was simple negligence as a matter of law, not bad faith.

2. The sufficiency of the evidence supporting the verdict in favor of Malone for bad-faith delay of payment.

¶ 30. Malone sought to prove that Gallagher Bassett’s bad-faith failure to investigate and pay his legitimate workers’ compensation claim caused him to delay *310 having skin-graft surgery, which proximately caused the amputation of his leg. His expert, Dr. Keith Melancon, testified to a reasonable degree of medical certainty that the delay caused an increase in infection that necessitated aggressive surgery, and caused or contributed to the eventual leg amputation. While there was voluminous evidence surrounding Gallagher Bas-sett’s handling of Malone’s claim, the only relevant evidence pertains to what occurred in August 2000, because it was Gallagher Bassett’s conduct during precisely that time frame that Malone claimed to have delayed his skin-graft surgery. The appropriate analysis focuses on Gallagher Bassett’s conduct in light of what Gallagher Bassett knew or reasonably should have known at that time.
¶ 31. The evidence of Gallagher Bas-sett’s role in the delayed payment of workers’ compensation benefits centered upon the conduct of a claims adjuster, Deborah Robichaux. Robichaux’s only source for notice of a workers’ compensation injury was Nabors. The evidence was that Robi-chaux had received notification from Na-bors that Malone had a work-related injury and a pre-existing condition. Then, she had initiated a conversation with Malone’s supervisor, Bobby Wallace, who had confirmed that Malone had cut his leg at work, that he had a pre-existing condition that affected the area of the cut, that he needed skin-graft surgery, and that the need for the skin graft was due either to the cut or to the pre-existing condition.
¶ 32. After her conversation with Wallace, Robichaux did nothing. She testified that it was Gallagher Bassett’s practice not to investigate a Nabors workers’ compensation claim until Nabors had transmitted a B-3 form, and she expected that a B-3 form would be submitted. Nabors’s claims coordinator, Alice Lankford, and Nabors’s counsel, Laura Doerre, both agreed that a B-3 form was required for Gallagher Bas-sett to set up a claim file. Lankford testified that if a claim is reported by phone, the claim file should be set up after the B-3 form is obtained by the claims adjuster. Nabors’s policy was to complete a B-3 form and transmit it to Gallagher Bassett any time a first-aid-only injury necessitated surgery or lost time; yet, it did not do so in this case. Nevertheless, Robichaux admitted that, when she did not receive a B-3 from Nabors, she should have requested one.
¶ 33. It is vital to evaluate Robichaux’s conduct in light of the applicable law governing the compensability of workers’ compensation claims. Workers’ compensation benefits are payable for a work-related injury that aggravates, accelerates, or lights up a pre-existing condition, but no benefits are due for disability that is solely attributable to a pre-existing condition, or when the work-related injury no longer combines with the pre-existing condition to produce disability. Rathborne, Hair & Ridgeway Box Co. v. Green, 237 Miss. 588, 594, 115 So.2d 674, 676 (1959). A federal court has recognized that in Mississippi, a pre-existing condition may be a complete defense to workers’ compensation benefits, and an adjuster placed on notice of a preexisting condition has “a valid legal basis ... to spend some time investigating the relationship between the Plaintiffs prior injury and his work-place injury.” McLendon v. Wal-Mart Stores, Inc., 521 F.Supp.2d 561, 566 (S.D.Miss.2007). Thus, Robichaux’s conversation with Wallace only placed her on notice of a possibility that Malone had suffered a compensable injury. Further investigation was needed for Robichaux to determine compensability. Viewing the evidence in the light most favorable to Malone, Robichaux’s next step should have been to commence an investigation of the claim.
*311 ¶ 34. Considering all of the evidence in the light most favorable to Malone, I do not find that Robichaux’s failure to investigate after her conversation with Wallace rises to the level of malice, reckless disregard for Malone’s rights, or gross negligence. No evidence suggests that Robi-chaux acted maliciously or with reckless disregard for the consequences to Malone. Nor is there sufficient evidence of gross negligence. “ ‘Gross negligence’ is that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them.” Dame v. Estes, 233 Miss. 315, 318 101 So.2d 644, 645 (1958). “Simple negligence” is the failure to exercise due care, and signifies conduct that amounts to heedlessness, inattention, or inadvertence. Turner v. City of Ruleville, 735 So.2d 226, 229 (Miss.1999) (citing Beta Beta Chapter of Beta Theta Pi v. May, 611 So.2d 889, 895 (Miss.1992)); Green v. Ingram, 269 Va. 281, 608 S.E.2d 917, 923 (2005).
1135. In August 2000, Robichaux lacked any knowledge that, without the immediate receipt of benefits, Malone would delay the surgery against medical advice. What she knew was that Malone needed skin-graft surgery for a possible work-related injury, and she expected further contact from Na-bors. Although Robichaux should have followed up with Nabors, her failure to do so amounts to mere inadvertence when considered in light of the facts that: (1) Nabors’s admitted practice was to send a B-3 form to prompt Gallagher Bassett to investigate a claim; (2) Robichaux had no notice that a claim definitely was going to be made; and (3) Robichaux commenced an investigation once she received a B-3 form in November 2001. At worst, it appears that, in August 2000, Robichaux failed to follow up on a possible claim due to her own thoughtlessness. Her omission constituted mere inadvertence, heedlessness, or inattention, which constituted simple negligence. In my opinion, viewing the evidence in the light most favorable to the verdict, Malone proved that Gallagher Bassett’s conduct amounted to nothing more than simple negligence.[7] Therefore, not only was Gallagher Bassett’s conduct insufficient to support a finding of bad faith, but recovery against Gallagher Bas-sett for simple negligence was barred by the exclusivity clause of the Workers’ Compensation Act. Miss.Code Ann. § 71-3-9 (Rev.2000). The evidence was insufficient to support the verdict against Gallagher Bassett in favor of Malone.
¶ 36. I point out that a delay of virtually any length in the payment of workers’ compensation benefits invariably will cause damages of some kind to the injured employee, such as a slight worsening of the work-related injury, emotional distress, or the like. The Workers’ Compensation Act has established a balance between the interests of employers and employees: the employer provides compensation for work-related injuries -without regard to fault, and the Act is the employee’s exclusive remedy. See 9 John R. Bradley, Jr., Encyclopedia of Mississippi Law (Jeffrey Jackson & Mary Miller eds.) § 76:1 (2002). This balance is threatened if minor misconduct by the employer, carrier, or adjuster that causes a delay in payment is sufficient to permit an employee to recover damages at law. On this point, a California appellate court aptly has stated:
[Mjinor delays in getting medical service, such as for a few days or even a few hours, caused by a carrier, could *312 become the bases of independent suits, and these could be many and manifold indeed. The uniform and exclusive application of the law would become honeycombed with independent and conflicting rulings of the courts. The objective of the Legislature and the whole pattern of workmen’s compensation could thereby be partially nullified.
Taylor, 420 So.2d at 566 (quoting Noe v. Travelers Ins. Co., 172 Cal.App.2d 731, 342 P.2d 976, 979 (1959)).
¶ 37. I would reverse and render the verdict against Gallagher Bassett in favor of Malone.

3. The sufficiency of the evidence supporting the verdict in favor of Na-bors for breach of contract.

¶ 38. I turn to the verdict in favor of Nabors against Gallagher Bassett for breach of contract. Gallagher Bassett argues that its conduct was not imputable to Nabors and could not have rendered Na-bors liable to Malone. At trial, Nabors’s theory of recovery against Gallagher Bas-sett was that, but for Gallagher Bassett’s bad faith, Nabors would not have been liable to Malone, and would not have incurred settlement and defense costs. Na-bors contended that Gallagher Bassett’s bad-faith delay breached the contract with CNA requiring Gallagher Bassett to provide fair and expeditious handling of Na-bors’s workers’ compensation claims, and the breach proximately caused Nabors to incur liability to Malone. Nabors argued that its potential liability to Malone, based on Gallagher Bassett’s bad faith, prompted its Mary Carter settlement with Malone. Nabors’s jury instruction D-33 permitted the jury to find that Nabors had proven by a preponderance of the evidence that Gallagher Bassett’s breach of contract proximately caused or contributed to Na-bors’s damages, including:
(1) the costs, benefits, and penalties associated with Gary Malone’s workers’ compensation claim and (2) the settlement and cost of defense, including attorney’s fees, incurred in defense of both Gary Malone’s bad faith action and Gary Malone’s workers’ compensation claim against Nabors Drilling USA, L.P. and that Nabors Drilling USA, L.P. would not have incurred but for Gallagher Bas-sett Services, Inc.’s breach of contract, if any.
¶ 39. In my opinion, Gallagher Bassett correctly argues that its acts were not imputable to Nabors. In Luckett, this Court held that an employer, as well as a carrier, may be held liable for bad-faith nonpayment of workers’ compensation benefits. Luckett, 481 So.2d at 290. However, when a carrier acts in bad faith, the carrier “ceases to be the ‘alter ego’ of the employer,” but is involved in an independent relationship with the employee. Holland, 469 So.2d at 58; Pilate v. Am. Fed. Ins. Co., 865 So.2d 387, 395 (Miss.Ct.App. 2004). The import of this rule is that an employer is not liable for the bad-faith acts of an insurance carrier, or, as in this case, the bad-faith acts of an insurance adjuster with whom the carrier has contracted to determine the compensability of claims. In the context of a fraudulent-joinder claim, the United States District Court for the Southern District of Mississippi determined that an employer who was free from any wrongdoing could not be held liable for the carrier’s bad-faith nonpayment of a workers’ compensation claim. Toney v. Lowery Woodyards, 278 F.Supp.2d 786, 793 (S.D.Miss.2003) (citing Holland, 469 So.2d at 58). Because the employer and carrier are not alter egos when acting in bad faith, the employer and carrier each are liable for their own bad-faith acts, and the bad-faith acts of one are not imputable to the other.
*313 ¶40. I have concluded that the evidence was insufficient to support a finding that Gallagher Bassett acted in bad faith. But even if Gallagher Bassett was guilty of bad faith, its bad faith was not imputable to Nabors. Holland, 469 So.2d at 58; Pilate, 865 So.2d at 395; Toney, 278 F.Supp.2d at 793. Nabors settled the case because it perceived its potential liability to Malone; however, any liability which Nabors had to Malone could have arisen only from Nabors’s own failure to comply with the Workers’ Compensation Act concerning Malone’s claim. Evidently, Na-bors settled with Malone to avoid this potential liability, and then sought to recover the settlement amount and defense expenses from Gallagher Bassett based on an “alter-ego” theory. This Nabors could not do, because it was not liable as a matter of law for any bad-faith conduct committed by Gallagher Bassett. I would reverse and render the verdict against Gallagher Bassett in favor of Nabors.

. I note that the trial court appeared to recognize the paucity of evidence supporting a heightened tort when the court refused to submit the issue of punitive damages to the jury.