GRIFFIS, P.J.,
for the Court:
¶ 1. On April 14, 2009, Liberty Mutual Insurance Company filed a complaint against Richard Shoemake seeking reimbursement for workers’ compensation benefits paid on his behalf. Shoemake filed a motion for summary judgment, and Liberty Mutual filed a response and a cross-motion for summary judgment. The Newton County Circuit Court granted Shoe-make’s motion for summary judgment and denied Liberty Mutual’s motion for summary judgment. Liberty Mutual appeals.
¶ 2. We find that the circuit court erred in applying Alabama law to Liberty Mutual’s subrogation rights. Thus, we find that the circuit court erred in granting Shoe-make’s motion for summary judgment and in denying Liberty Mutual’s motion for summary judgment. The judgment of the circuit court is reversed, and this case is remanded for the circuit court to determine the exact amount of Liberty Mutual’s subrogation interest for the workers’ compensation benefits paid.
FACTS
¶ 3. On September 18, 2003, Shoemake was injured when his truck collided with a *3 CSX train in Tuskegee, Alabama. At the time of the accident, Shoemake, a Mississippi resident, was employed by Simmons Wrecker Service (Simmons), a Mississippi company. The accident occurred in the course and scope of Shoemake’s employment.
¶ 4. Simmons maintained a workers’ compensation policy with Liberty Mutual. Following his accident, Liberty Mutual paid Shoemake $132,402.65 in workers’ compensation benefits. Shoemake also filed a personal-injury lawsuit in Alabama against CSX and its engineer. Shoemake settled his claim against CSX and received $315,000 in settlement proceeds. Following the settlement, Shoemake reimbursed Liberty Mutual $82,226.84. Liberty Mutual then filed suit against Shoemake in Mississippi seeking reimbursement for the remaining $50,175.81 in workers’ compensation benefits paid on Shoemake’s behalf.
¶ 5. The circuit court reasoned that because Liberty Mutual’s subrogation claim was derived from Shoemake’s personal-injury claim in Alabama, Alabama law should also govern Liberty Mutual’s sub-rogation rights. Applying Alabama’s “common fund doctrine,” the circuit court found that Liberty Mutual was only entitled to reimbursement for $82,226.84. Alternatively, the circuit court reasoned that Liberty Mutual had waived its right to subrogation by failing to intervene in Shoemake’s personal-injury lawsuit.
¶ 6. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 7. Liberty Mutual argues that the circuit court erred in granting Shoemake’s motion for summary judgment and in denying its motion for summary judgment. Specifically, Liberty Mutual takes issue with the circuit court’s application of Alabama law to Liberty Mutual’s subrogation rights. Shoemake contends that even if Mississippi law applies, Liberty Mutual waived its right to subrogation by failing to intervene in Shoemake’s personal-injury lawsuit.
¶ 8. An appellate court reviews a circuit court’s decision to grant or deny summary judgment de novo. Patterson v. Tibbs, 60 So.3d 742, 753 (¶ 41) (Miss.2011). Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). Such evidence is reviewed “in the light most favorable to the nonmoving party.” Patterson, 60 So.3d at 753 (¶ 41) (citing Chisolm v. Miss. Dep’t of Transp., 942 So.2d 136, 140 (¶ 60) (Miss.2006)).

1. Conflict of Laws

¶ 9. Shoemake contends that Alabama law governs Liberty Mutual’s subro-gation rights and that under Alabama’s “common fund doctrine,” Liberty Mutual is only entitled to reimbursement for $82,226.84. “The general rule in Alabama is that attorney fees can be awarded only when ‘authorized by statute, when provided in a contract, or by special equity, such as in a proceeding where the efforts of an attorney created a fund out of which fees may be paid.’ ” Int'l Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163, 166 (Ala.1989) (quoting Shelby County Comm’n v. Smith, 372 So.2d 1092, 1096-97 (Ala.1979)).
¶ 10. The common-fund doctrine rests on the reasoning that “where one litigant has borne the burden of expense of the litigation that has inured to the benefit of others as well as himself, those who *4 have shared in the benefits should contribute to the expense.” Id. (quoting Kimbrough v. Dickinson, 251 Ala. 677, 39 So.2d 241, 246 (1949)). Shoemake contends that Alabama’s common-fund doctrine applies to his case; therefore, Liberty Mutual’s subrogation interest should be reduced by its proportionate share of attorney’s fees, which equal $50,175.81.
¶ 11. Under the Mississippi’s Workers’ Compensation Act, an employee who obtains a judgment against a third-party tortfeasor may recover the “reasonable costs of collection.” Miss.Code Ann. § 71-3-71 (Rev. 2011). Attorney’s fees are considered a cost of collection. Owen & Galloway v. Travelers Ins. Co., 499 So.2d 776, 778 (Miss.1986). However, the Mississippi Supreme Court has consistently held that “the compensation insurance carrier cannot be charged with a portion of the employee’s cost of recovery.” Id. at 780. Therefore, under Mississippi law, the “compensation insurance carrier [is] entitled to full reimbursement out of the proceeds of the employee’s third[-]party recovery for the compensation benefits paid to the employee with no deduction for a share of the employee’s cost of the recovery.” Id.
¶ 12. Because a conflict exists between the substantive laws of Alabama and Mississippi, we must first determine which state’s law governs this case. Mississippi resolves eonfliet-of-laws questions using the “significant relationship” test found in the Restatement (Second) of Conflict of Laws (1971). Ellis v. Tmstmark Builders, Inc., 625 F.3d 222, 226 (5th Cir.2010). The Restatement sets forth seven general factors for courts to consider when analyzing choice-of-law questions:
(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.
Restatement (Second) of Conflict of Laws § 6(2).
¶ 13. Courts are instructed to consider the following additional factors where the action involved sounds in tort: “(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.” Restatement (Second) of Conflict of Laws § 145(2). “These [factors] are to be evaluated according to their relative importance with respect to the particular issue.” Id.
¶ 14. Shoemake relies on O’Neal v. Kennamer, 958 F.2d 1044 (11th Cir.1992), to argue Alabama law should apply to Liberty Mutual’s subrogation rights. Kevin O’Neal, a Tennessee resident, worked for Clopay Corp., a Tennessee employer. Id. at 1045. While working in Alabama, O’Neal sustained injuries from a collision with a truck. Id. He received both disability and medical benefits under Tennessee’s workers’ compensation laws. Id. O’Neal later filed suit in an Alabama federal court against the other truck driver involved in the collision and the driver’s employer. Id. Clopay and Liberty Mutual, its workers’ compensation carrier/plan administrator, intervened in the suit. Id. O’Neal ultimately settled his personal-injury lawsuit. Id. Clopay and Liberty Mutual sought to exercise their subrogation rights according to Tennessee’s workers’ compensation law, under which they “would be *5 subrogated for both compensation payments and medical benefits.” Id. The defendants in O’Neal’s personal-injury lawsuit argued that Alabama law controlled and that, under Alabama law, Liberty Mutual and Clopay were entitled to recover “compensation payments but not medical benefits paid.” Id. at 1046.
 ¶ 15. Applying Alabama’s conflict-of-laws rules,[1] the O’Neal court determined that Alabama law controlled because “the substantive rights of an injured party in a tort case are determined according to the law of the state in which the accident occurred.” Id. Consequently, Alabama’s workers’ compensation law applied to an employer or insurer claim for workers’ compensation benefits paid on behalf of an injured employee. Id. This was true even though the employee invoked the law of a different state, Tennessee, to obtain workers’ compensation benefits. Id. at 1047. Because the court determined that Alabama’s workers’ compensation law applied, Clopay and Liberty Mutual were entitled to subrogation for compensation paid but not medical benefits. Id.
¶ 16. In support of its argument that Mississippi law controls, Liberty Mutual points to McDonald v. E.J. Lavino Co., 430 F.2d 1065 (5th Cir.1970). In McDonald, Curtis McDonald, an employee of a Mississippi company, sustained injuries in Alabama during the course of his employment. Id. at 1066. McDonald received benefits under Mississippi’s workers’ compensation law. Id. McDonald later filed a personal-injury suit in Alabama against the owner of the premises where he sustained his injuries. Id. McDonald ultimately settled his claim. Id. at 1067. The workers’ compensation insurance carrier did not seek to intervene in the third-party suit until after the settlement. Id.
¶ 17. On appeal, the United States Court of Appeals for the Fifth Circuit considered only the issue of whether the district court erred in denying the carrier’s motion to intervene. Id. at 1068. However, the court made a point of noting its “agreement with the trial court’s conclusion that the applicable substantive law determinative of [the carrier’s] subrogation rights is the Mississippi law under which compensation was paid.” Id. at 1069.
¶ 18. While the Fifth Circuit’s statement in McDonald was arguably dictum, the court continued to emphasize the importance of where workers’ compensation benefits were paid in analyzing conflict-of-laws questions. In Ellis, the Fifth Circuit applied Mississippi’s significant-relationship test in determining whether Mississippi’s or Alabama’s workers’ compensation law applied. Ellis, 625 F.3d at 225. Robert Ellis sustained injuries in Mississippi while working on a construction site for an Alabama employer who was a sub-subcontractor for Trustmark Builders, Inc. (Trustmark), an Alabama company. Id. at 223. Ellis recovered workers’ compensation benefits under Alabama’s workers’ compensation law. Id. Ellis then filed a personal-injury action against Trustmark. Id. Under Mississippi’s workers’ compen *6 sation law, injured employees were precluded from filing suit against co-employees or the general contractor. Id. at 225. However, Alabama’s workers’ compensation law permits a subcontractor’s injured employee to sue co-employees or the general contractor. Id. The distinct court determined that Mississippi law applied, thus barring Ellis’s personal-injury claim. Id. at 223.
¶ 19. The Fifth Circuit reversed the district court and determined that Alabama law applied. Id. at 229. The court noted that while the negligent conduct that resulted in Ellis’s injuries occurred in Mississippi, “[t]he Restatement makes clear that for personal injury actions ‘the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship Id. at 226 (emphasis added).
¶ 20. In support of its conclusion that Alabama had a more significant relationship to the action, the court considered the fact that Ellis’s relationship with his employer was centered in Alabama. Id. at 227. Additionally, aside from Ellis, all other parties were Alabama corporations and residents. Id. Finally, the court concluded that “Alabama has a more significant relationship to this case than does Mississippi, in large part because the parties have already engaged Alabama’s workers[’] compensation scheme.” Id.
¶ 21. We find the Fifth Circuit’s more recent decision in Ellis persuasive and decline to follow O’Neal. In this case, both the injury and the negligent conduct causing the injury occurred in Alabama. Thus, the first two factors under section 145(2) favor Alabama. See Restatement (Second) of Conflict of Laws § 145(2). However, “the site of the injury does not ‘invariably’ determine choice of law when ‘the most substantial relationships of the parties and the dominant interest of the forum require application of another state’s law.’ ” Ellis, 625 F.3d at n. 17 (quoting Mitchell v. Craft, 211 So.2d 509, 510 (Miss.1968)).
¶ 22. Given that Shoemake is a Mississippi resident, and his employer, Simmons, is a Mississippi company, the next two factors under section 145(2) favor Mississippi. Furthermore, under Ellis, the fact that Shoemake received benefits in accordance with Mississippi’s workers’ compensation law also strongly favors Mississippi. Finally, applying Alabama law to an insurer’s subrogation rights even though the insurer paid benefits under Mississippi’s workers’ compensation law would not protect “justified expectations” or provide a predictable and unified result. Based on these facts, Mississippi has a more significant relationship to the case than Alabama.
¶ 23. Accordingly, we find that the circuit court erred in applying Alabama law to Liberty Mutual’s subrogation rights.

2. Intervention

¶ 24. Under Mississippi law, Liberty Mutual is entitled to reimbursement for benefits paid on Shoemake’s behalf. However, Shoemake contends that Liberty Mutual waived its subrogation rights because it never sought to intervene in Shoemake’s third-party lawsuit. But Mississippi case law “has never required the insurance carrier to join or intervene in an employee’s third-party litigation to validate or enforce its subrogated claim to the proceeds recovered in that litigation.” Federated Mut. Ins. Co. v. McNeal, 943 So.2d 658, 662 (¶ 17) (Miss.2006) (citations omitted).
¶ 25. Kevin McNeal was injured while he was on the job. Id. at 659 (¶ 2). His employer had a workers’ compensation insurance policy with Federated. Id. at *7 (¶ 3). Federated paid McNeal workers’ compensation benefits. Id. McNeal then sued a third party for negligence and sought to recover damages for his injuries. Id. at (¶ 4). After a jury trial, McNeal obtained a judgment of $1.6 million dollars. Id. The case was eventually settled. Federated asserted its subrogation rights to the settlement funds, which McNeal disputed. The judge “directed the parties to deposit the disputed portion of the settlement funds in an interest bearing account maintained by McNeal’s attorney.” Id. at (¶5).
¶ 26. At that point, Federated filed a “Motion to Compel Compliance with [s]ection 71-3-71 requesting the circuit court order McNeal to reimburse it for all workers’ compensation benefits paid to him.” Id. at (¶ 6). The circuit court denied the motion. The court held that McNeal had not been “made whole” by the settlement, and Federated was not entitled to the reimbursement under its subrogation lien. Federated appealed this decision. Id. at 660 (¶ 6).
¶ 27. The supreme court considered section 71-3-71. McNeal, 943 So.2d at 660 (¶ 8). The court held:
[T]he statute unambiguously provides that, after deducting the costs of collection and attorneys’ fees, any recovery from a third party (whether by award or through settlement) must be applied first to repay the workers’ compensation insurer for benefits it paid the claimant. This Court, stating the statute must be strictly interpreted according to its mandatory language, has uniformly and consistently applied the statute and required reimbursement.
Id. at (¶ 9).[2] The court concluded that McNeal was required to reimburse Federated. Id. The court then noted that Federated’s subrogation rights were statutory, not contractual, and the “made whole” doctrine was not applicable. See id. at 661 (¶13).
¶ 28. The court then considered the fact that Federated did not intervene in the underlying lawsuit against a third party tortfeasor. Id. at 662 (¶ 17). The court then stated the law applicable to this case:
Federated pointed out in oral argument that' out case law has not required a workers’ compensation insurer to intervene or join in an employee’s third-party suit in order to assert its statutory lien. Indeed, Federated is correct, as this Court has never required the insurance carrier to join or intervene in an employee’s third-party litigation to validate or enforce its subrogated claim to the proceeds recovered in that litigation.
Id. (emphasis added and citations omitted). As the supreme court said, there is absolutely no requirement that the workers’ compensation carrier intervene to enforce its statutory subrogation claim.
¶ 29. In McNeal, the question considered by the court was “not whether Federated is entitled to subrogation without intervention, but rather whether Federated may appeal the circuit court’s decision without intervention.” Id. On this question, the court held: “However, we stress that the better practice for insurers who anticipate the possible need for judicial assistance in enforcing their liens is to file a formal intervention in accordance with the provisions of Rule 24 of the Mississippi Rules of Civil Procedure.” McNeal, 943 So.2d at 663 (¶ 20).
¶ 30. Liberty Mutual is entitled to statutory reimbursement. The supreme court *8 “has never required the insurance carrier to join or intervene in an employee’s third-party litigation to validate or enforce its subrogated claim to the proceeds recovered in that litigation.” Id. at 662 (¶ 17).
¶ 81. Accordingly, we find that the circuit court erred in granting Shoemake’s motion for summary judgment and in denying Liberty Mutual’s motion for summary judgment. The judgment of the circuit court is reversed, and this case is remanded for the circuit court to determine the exact amount of Liberty Mutual’s subrogation interest for the workers’ compensation benefits paid.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF NEWTON COUNTY IS REVERSED, AND THIS CASE IS REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY RUSSELL, J. MAXWELL, J., NOT PARTICIPATING.

. Alabama applies the lex loci delicti rule when deciding conflict-of-laws questions arising under tort actions and actions arising under its workers’ compensation law. Powell v. Sappington, 495 So.2d 569, 569-70 (Ala.1986). Under this rule, "an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred.” Id. at 570 (quoting Norris v. Taylor, 460 So.2d 151, 152 (Ala.1984)). However, Mississippi does not follow the lex loci delicti rule in resolving conflict-of-laws questions. See McDaniel v. Ritter, 556 So.2d 303, 315 (Miss.1989). Instead, the state where the injury occurred is one of several factors considered in determining which state has a more significant relationship to the action. Id. at n. 11.

. This Court unanimously cited and applied this language in St. Paul Travelers Insurance Co. v. Burt, 982 So.2d 992, 994 (¶ 14) (Miss.Ct.App.2008).