# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 28, 2014

No. 11-60818

Lyle W. Cayce
Clerk

CLINTON WILLIAMS,

Plaintiff-Appellant,

v.

LIBERTY MUTUAL INSURANCE CO.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

The conflict of laws issue in this diversity case, removed from a Mississippi state court, is which state's law, that of Mississippi or Alabama, applies to decide whether the plaintiff, a Mississippi resident injured in Mississippi while working for an Alabama resident contractor, has an action in tort for damages against the employer's worker's compensation insurer because of the insurer's intentional bad-faith refusal to pay him worker's compensation when due. Under Mississippi law, upon the same alleged facts, except that the worker was employed by a Mississippi resident employer when she was injured, the worker could recover damages in tort from the employer's worker's compensation insurer. *See Southern Farm Bureau Cas. Ins. Co. v. Holland*, 469 So. 2d 55

No. 11-60818

(Miss. 1984). The Mississippi Supreme Court held that the action is not barred by the exclusive remedy provision of the Mississippi Worker's Compensation Act because the action arises from an independent tort committed by the insurer outside of the scope of the worker's employment. *Id.* at 56. On the other hand, the Alabama Supreme Court has held that the Alabama Worker's Compensation Act's exclusive remedy provision bars such an action, although it does not bar an action for the tort of "outrage" against an insurer involving extreme and outrageous conduct over and beyond a mere intentional bad-faith refusal to pay compensation. *Stewart v. Matthews Indus., Inc.*, 644 So. 2d 915, 918 (Ala. 1994).[1] Williams has sufficiently alleged an intentional bad-faith refusal to pay worker's compensation claim against Liberty Mutual under Mississippi law, a claim that would be barred by the exclusivity provision of the Alabama Worker's Compensation Act. *See id.* Hence, the choice of which state's law applies is crucial to Williams' ability to state a claim upon which relief can be granted. The district court concluded that Alabama's substantive law applied, and accordingly dismissed Williams' suit. We reverse and remand the case to the district court for further proceedings consistent with this opinion.

## I.

Clinton Williams, the Mississippi resident plaintiff, was injured in the course and scope of his employment in Mississippi while he was working for Steven Tanner, an Alabama resident contractor. The employer's insurer, Liberty Mutual Insurance Company, did not timely begin paying Williams worker's

---

[1] To make out a case of outrageous conduct, the plaintiff must show that the conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 917 (quotation marks omitted).

No. 11-60818

compensation. In fact, it delayed payments for eight months, during which time Williams brought proceedings for compensation against Liberty Mutual both in the Mississippi Worker's Compensation Commission (MWCC) and in an Alabama state court. Additionally, Williams asserted a claim for damages for "outrageous conduct" against Liberty Mutual in his Alabama suit. Ultimately, Liberty Mutual conceded its liability to Williams for worker's compensation under both Mississippi and Alabama law and reached settlement agreements with Williams in which Williams reserved his rights to sue the insurer for intentional bad-faith refusal to pay compensation in Mississippi and for outrageous conduct in Alabama.[2] The parties, however, later agreed to dismiss his Alabama suit for "outrageous conduct" damages without prejudice. Williams sued Liberty Mutual in Mississippi state court for damages resulting from the insurer's intentional bad-faith refusal to pay him compensation timely. Liberty Mutual removed Williams' Mississippi state-court suit to the U.S. District Court for the Southern District of Mississippi and successfully moved to dismiss Williams' suit. *Williams v. Liberty Mut. Ins. Co.*, No. 2:10-CV-205-KS, 2011 WL 5183572 (S.D. Miss. Oct. 31, 2011) (unpublished). Williams timely appealed.

---

[2] *See Thomas v. Wash. Gas Light Co.*, 448 U.S. 261 (1980) (plurality holding that the Full Faith and Credit Clause does not preclude successive workers' compensation awards, since a state has no legitimate interest within the context of the federal system in preventing another state from granting a supplemental compensation award when that second state would have had the power to apply its workers' compensation law in the first instance); *Southland Supply Co. v. Patrick*, 397 So. 2d 77, 79 (Miss. 1981) (holding it was correct to award a worker "benefits under the Louisiana Workmen's Compensation law subject to credit for any amounts paid under the Mississippi Act").

No. 11-60818

## II.

This Court reviews questions of law, including conflicts of law questions, *de novo* and district court factual determinations for clear error. *Abraham v. State Farm Mut. Auto. Ins. Co.*, 465 F.3d 609, 611 (5th Cir. 2006). The facts here are undisputed, so our review is *de novo*. *See Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 882 (5th Cir. 1993), *opinion reinstated in part on reh'g en banc*, 61 F.3d 1113 (5th Cir. 1995).

A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4-5 (1975) (per curiam); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225 (5th Cir. 2010); *see also Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). This diversity action was removed from Mississippi state court to the U.S. District Court for the Southern District of Mississippi. It is undisputed that Mississippi's choice-of-law rules therefore govern.

### A.

In Mississippi, choice-of-law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation. *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006). As we noted at the outset, there is a crucial and true conflict between Alabama and Mississippi law on the issue presented in this case.[3] Once a true conflict is

---

[3] *Compare Stewart*, 644 So. 2d at 918 (explaining that in Alabama, a tort claim against a worker's compensation insurance carrier alleging only a bad-faith failure to pay an insurance claim is barred by the exclusivity provision of the Alabama Workers' Compensation Act), *with Holland*, 469 So. 2d at 56-59 (holding that the Mississippi Worker's Compensation Act permits workers to pursue claims for the tort of intentional bad-faith refusal to pay benefits against worker's compensation insurance carriers).

established, Mississippi's choice of law test consists of three steps: "(1) [D]etermine whether the laws at issue are substantive or procedural[.]" *Ellis*, 625 F.3d at 225 (quotation marks omitted); *accord Zurich*, 920 So. 2d at 433. If they are procedural, the inquiry ends and Mississippi law applies. *See Zurich*, 920 So. 2d at 433. "(2) [I]f substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws." *Ellis*, 625 F.3d at 225-26. With regard to the last step, Mississippi resolves conflict-of-laws questions using the "significant relationship" test found in the Restatement (Second) of Conflict of Laws (1971). *Id.* at 226; *accord, e.g.*, *Liberty Mut. Ins. Co. v. Shoemake*, 112 So. 3d 1, ¶12 at *4 (Miss. Ct. App. 2012) (en banc) (citing *Ellis*, 625 F.3d at 226), *rev'd on other grounds*, 111 So. 3d 1207, 1210 (Miss. 2013) ("We find no fault with the Court of Appeals' choice-of-law analysis as it applies to the Mississippi action."). This is also known as the "center of gravity" test in Mississippi. *See, e.g.*, *Mitchell*, 211 So. 2d at 514 (quotation marks omitted). "A court that applies the 'center of gravity' approach must determine 'which state has the most substantial contacts with the parties and the subject matter of the action.'" *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230-31 (5th Cir.) (quoting *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985)), *reh'g in part on other ground granted*, 423 F.3d 522 (5th Cir. 2005).

Regarding the first step of the choice-of-law analysis, "the law of the forum determines whether an issue in the action is substantive or procedural in nature." *Hartford Underwriters Ins. Co. v. Found. Health Servs. Inc.*, 524 F.3d 588, 593 (5th Cir. 2008) (internal quotation marks and alteration omitted). "In Mississippi, 'few laws are classified as procedural' and for choice of law purposes

No. 11-60818

the Mississippi Supreme Court has labeled as procedural only rules of evidence and procedure, statutes of limitations, and awards of attorney's fees and interest." *Id.* (quoting *Zurich*, 920 So. 2d at 433). When "resolution of [an] issue determines whether [the plaintiff] has 'has a viable cause of action,' . . . the issue is substantive." *Id.* (quoting *Hancock v. Watson*, 962 So. 2d 627, 629 (Miss. Ct. App. 2007)). The parties do not dispute that the issue here is substantive. We agree that the issue in this case is a substantive rather than procedural matter because it determines whether Williams has a viable cause of action. *See id.* We therefore proceed to the next step in the choice-of-law inquiry.

The parties' central dispute pertains to the second choice-of-law factor, whether Williams' claim for damages based on Liberty Mutual's alleged intentional bad-faith refusal to pay him worker's compensation is properly characterized as a tort or a contract action. Mississippi law determines whether a matter is properly characterized as a tort or a contract because that inquiry is part of Mississippi's choice-of-law rules. *See, e.g.*, *Klaxon*, 313 U.S. at 496; *Ellis*, 625 F.3d at 225.

The Mississippi Supreme Court, in the seminal case of *Southern Farm Bureau Casualty Insurance Co. v. Holland*, held that an employee entitled to worker's compensation benefits from her employer has a separate and independent right to recover damages from the employer's worker's compensation insurer because of the insurer's intentional bad-faith refusal to pay compensation when due, which constitutes an independent intentional tort committed by the insurer outside the scope of the worker's employment. 469 So. 2d at 56-59. The action "derives from the independent and allegedly intentional, tortious conduct of [the insurer] in refusing to pay benefits owing under the

6

No. 11-60818

[Mississippi Workers' Compensation] Act without an arguable basis therefor." *Id.* at 59. Moreover, in *Holland*, the Mississippi Supreme Court concluded "that the exclusivity provision of the Workers' Compensation Act does not bar an action by the employee against the insurance carrier for the commission of an intentional tort. The independent tort is not compensable under our Workers' Compensation Act and to extend immunity to compensation carriers for a separate injury to workers goes far beyond the intent of the act." *Id.*; *see, e.g.*, *Leathers v. Aetna Cas. & Sur. Co.*, 500 So. 2d 451, 452-53 (Miss. 1986) (holding that injured worker's complaint, alleging that his employer in bad faith refused to process worker's compensation claim, stated a cause of action in tort notwithstanding the exclusivity provision of the Workers' Compensation Act) (citing, *inter alia*, *Holland*, 469 So. 2d at 57); *McCain v. Nw. Nat'l Ins. Co.*, 484 So. 2d 1001 (Miss. 1986) (holding that, under *Holland*, the Act's exclusivity provision did not bar the plaintiff's claim that the defendants contracted to settle the workers' compensation claim but failed to fulfill their duties under the contract for no arguable reason and in bad faith); *Luckett v. Miss. Wood Inc.*, 481 So. 2d 288, 290 (Miss. 1985) (extending *Holland* to allow a bad-faith refusal action against employers as well as insurance carriers notwithstanding workers' compensation exclusivity provision); *see also Powers v. Travelers Ins. Co.*, 664 F. Supp. 252, 253 (S.D. Miss. 1967) ("Since the action does not arise under the Workers' Compensation Law, [28 U.S.C. §] 1445(c) does not bar removal.").[4]

---

[4] The court in *Holland* gave additional reasons for its decision: "The majority of courts that have addressed the question have held that exclusivity provisions do not bar an action by an injured worker against the compensation carrier where the basis of the action is an intentional tort." 469 So. 2d at 57 (citations omitted). "The employee's right to sue the carrier for intentional torts has been upheld on several grounds. First, in committing intentional torts, the insurance carrier ceases to be the 'alter ego' of the employer. Rather, the carrier is

No. 11-60818

*Holland* and the cases following it make clear that an insurer's intentional bad-faith refusal to pay worker's compensation timely is an independent tort committed by the insurer outside of the scope of the worker's employment; that it does not arise out of the employee's job-related personal injury or the Workers' Compensation Act; and that it, therefore, is legally distinct from and independent of any claims arising under the Workers' Compensation Act.

In tort matters, Mississippi applies section 145 of the Restatement Second. *E.g.*, *Mitchell*, 211 So. 2d at 514-16; *see Ellis*, 625 F.3d at 226-27 (in suit governed by Mississippi's choice-of-law rules, applying Restatement Second's section 145 to plaintiff's tort claim for negligence against a third-party tortfeasor following work-related injury for which he had previously received workers' compensation benefits). For the reasons that follow, the section 145 factors, which Mississippi courts regard as relevant to the choice-of-law determination in a tort action, dictate that Mississippi law, and not Alabama law, governs the conflict of law question raised by the present tort suit.

Section 145 instructs courts to consider the following factors when an action sounds in tort: "the place where the injury occurred"; "the place where the conduct causing the injury occurred"; "the domicile, residence, nationality, place of incorporation and place of business of the parties"; and "the place where the

---

involved in an independent relationship with the employee when committing such tortious acts." *Id.* at 58 (citations omitted). "Secondly, penalty provisions provided by state statutes, while adequate compensation for negligent conduct, were not intended as exclusive remedies for intentional wrongdoings. Where the wrong is intentional, malicious or calculated to cause intimidation, the claimant is entitled to another remedy." *Id.* (citations omitted). "Mississippi Code Annotated section 71-3-37(5) and 71-3-37(6) (1972) provides for ten percent and twenty percent penalty for non-payment of an installment of compensation dues. This provision of the Act did not contemplate the commission of an independent tort, and its penalty is hardly adequate to deter willful actions of an overreaching insurance company against a weekly wage earner." *Id.*

8

relationship, if any, between the parties is centered." RESTATEMENT SECOND § 145(2). "These [factors] are to be evaluated according to their relative importance with respect to the particular issue." *Id.* In adopting the Restatement Second's test, the Mississippi Supreme Court was careful to emphasize that the new test did not altogether do away with Mississippi's *lex loci delicti* test for tort actions:

> The [Restatement] conflict-of-law or choice-of-law rules which we adopt require only a modification and not an overruling of earlier cases applying the law of the state where the injury occurred. Ordinarily, the local law of the state where the injury occurred will determine the rights and liabilities of the parties, unless with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.

*Mitchell*, 211 So. 2d at 516. "Mississippi courts will apply the law of the place of injury unless another state has a more substantial relationship to the action." *Davis v. Nat'l Gypsum Co.*, 743 F.2d 1132, 1133 (5th Cir. 1984) (citing *Mitchell*, 211 So. 2d at 516).

Considering the foregoing factors, we conclude that, pursuant to Mississippi's choice-of-law rules, Mississippi has the most significant relationship to the tort action and that Mississippi substantive law therefore governs this dispute. Williams, a Mississippi resident who was the victim of a job-related accident in Mississippi, alleges that he was injured when Liberty Mutual, intentionally and in bad faith, refused to pay him worker's compensation benefits to which he was entitled under Mississippi law and which he sought in the Mississippi Worker's Compensation Commission. Thus, Mississippi is the state where the injury of intentional bad-faith refusal to pay worker's compensation occurred. *See Mitchell*, 211 So. 2d at 516; *Davis*, 743 F.2d

No. 11-60818

at 1133; RESTATEMENT SECOND § 145(2)(a).  In addition, Williams alleges that Liberty Mutual's intentional bad-faith misconduct took place in Mississippi, where Liberty Mutual allegedly refused to pay him workers' compensation benefits.[5]  *See* RESTATEMENT SECOND § 145(2)(b).  Williams is a resident of Mississippi, and Liberty Mutual does business in Mississippi.  *See id.* § 145(2)(c).[6]  Considering these factors together, we conclude that Mississippi has the most significant relationship to this intentional tort suit, favoring the

---

[5] Williams also alleges that Liberty Mutual made decisions regarding Williams' claim in Tennessee and Wisconsin, where the company has offices.  However, neither party asserts that either Tennessee or Wisconsin has an interest in applying its law to this action, and we do not consider those states to be relevant contacts for the purpose of Mississippi's center-of-gravity test.

[6] Liberty Mutual objects that the relationship between Tanner and Liberty Mutual is centered in Alabama.  However, the tortfeasor-victim relationship between Williams and Liberty Mutual—the relevant parties in this intentional tort action—only arose after Williams was injured in Mississippi and after he sought and was allegedly intentionally refused benefits by Liberty Mutual in Mississippi.  Consequently, the center of gravity of the parties' relationship, if anything, favors the application of Mississippi law rather than Alabama law. *See id.* § 145(2)(d).

10

No. 11-60818

application of Mississippi law.[7] We conclude that under Mississippi's choice-of-law principles, Williams' tort suit is governed by Mississippi substantive law.

## B.

The district court erroneously concluded that, under Mississippi law, Liberty Mutual's alleged intentional bad faith refusal to pay Williams worker's compensation was merely a breach of contract and not an "independent tort committed by the carrier outside the scope of [Williams'] employment" as the Mississippi Supreme Court held in *Holland*, 469 So. 2d at 56. Contrary to *Holland*, its progeny, and its underlying reasons discussed above, the district court reasoned:

> Any claim for contractual or extra-contractual damages that Williams has against Liberty Mutual emanates from the Alabama insurance contract between Liberty and Tanner. Liberty Mutual's obligation to pay worker's compensation benefits to Williams is based on the existence of that insurance contract. Although a "bad faith" breach of contract entitling an insured to punitive damages is sometimes referred to as an "independent tort" under Mississippi law, this does not detract from the fact that the underlying claim is breach of

---

[7] Section 145 also cross-references section 6 of the Restatement Second, which sets forth general factors relevant to choice-of-law analysis, *viz.*: the "needs of the interstate and international systems"; the relevant policies of the forum state; the relative policies and interests of other interested states; "the protection of justified expectations"; "the basic policies underlying the particular field of law"; "certainty, predictability, and uniformity of result"; and "ease in the determination and application of the law to be applied." RESTATEMENT SECOND § 6(2); *see id.* § 145(1). In Mississippi, "the factors enumerated in Restatement § 6 will from case to case be given such relative weight as they are entitled, consistent with the general scheme of the center of gravity test." *Boardman*, 470 So. 2d at 1032. In this case, Mississippi has an interest in providing a remedy to victims of intentional torts and in preventing insurance companies operating within its borders from engaging in bad-faith practices. *See, e.g.*, *Holland*, 469 So. 2d at 58. Mississippi also has a strong interest in ensuring that workers' compensation benefits are disbursed to its injured residents in a timely manner. *See id.*; *see also* RESTATEMENT SECOND § 6(2)(b), (2)(e) (listing "the relevant policies of the forum" and "the basic policies underlying the particular field of law"). The general factors listed in the Restatement section 6 do not weigh against the application of Mississippi law in this case.

11

No. 11-60818

> contract and the elements required to recover punitive damages for such breach are based on the manner in which the contract was breached.

*Williams*, 2011 WL 5183572, at *6.

Although the district court later cited *Holland* for the proposition that "Mississippi law permits a bad faith claim against a workers compensation carrier," *id.* at *7, the district court nevertheless substituted its own conclusion that Williams' action sounds in contract. As a federal court sitting in diversity jurisdiction, we must look to state law to determine how that state would apply its own choice-of-law rules. *See Challoner*, 423 U.S. at 4-5 (explaining that a federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits); *Klaxon*, 313 U.S. at 496 (same). In this case, which Liberty Mutual removed from Mississippi state court to the U.S. District Court for the Southern District of Mississippi, we therefore look to how Mississippi courts would classify the nature of the action—*i.e.*, as sounding in "tort, property, or contract." *Ellis*, 625 F.3d at 225; *see Challoner*, 423 U.S. at 4-5; *Klaxon*, 313 U.S. at 496. As we explained above, Mississippi recognizes a tort action for damages based on the independent tort committed by an insurer outside the scope of a worker's employment when the insurer intentionally and in bad faith refuses to pay workers' compensation benefits when they are due. *See Holland*, 469 So. 2d at 56.

The cases relied on by the district court are inapposite.[8] None of them involved an independent tort by a worker's compensation insurer against an

---

[8] *See Williams*, 2011 WL 5183572, at *6 (citing *Schoonover v. W. Am. Ins. Co.*, 665 F. Supp. 511 (S.D. Miss. 1987), *Am. Funeral Assur. Co. v. Hubbs*, 700 So. 2d 283 (Miss. 1997), *Blue Cross Blue Shield of Miss. v. Maas*, 516 So. 2d 495 (Miss. 1987), and *Braidfoot v. William Carey Coll.*, 793 So. 2d 642 (Miss. Ct. App. 2000)).

No. 11-60818

injured worker outside the scope of her employment by intentionally and in bad faith refusing to pay her compensation benefits when due. Instead, they involved actions for breach of contract, accompanied by intentional wrongs, insults, abuses or gross negligence so as to constitute an intentional and tortious breach of contract warranting punitive damages. Those cases do not undermine the conclusion that Mississippi classifies an action for the intentional bad-faith denial of workers' compensation insurance benefits as an independent tort. Therefore, we must treat Williams' action as sounding in tort.

Consequently, the district court erroneously analyzed this case under the Restatement (Second) of Conflicts sections 188 and 193, applicable to contracts, rather than under section 145 of torts as we conclude the Mississippi Supreme Court would have done applying its holding in *Holland* and its conflict of laws jurisprudence.[9] Because the district court began its analysis on an erroneous premise, it reached the wrong result in concluding that the Mississippi Supreme Court would decide that Alabama law governs the issue of whether Williams has stated a claim of intentional bad faith tort against Liberty Mutual upon which relief can be granted.

---

[9] Liberty Mutual relies on the Mississippi Supreme Court's opinion in *Owens v. Mississippi Farm Bureau Casualty Insurance Co.*, 910 So. 2d 1065 (Miss. 2005), in defense of its argument that sections 188 and 193 of the Restatement should be applicable in the case at bar. *Owens* is clearly distinguishable. There, the court resolved the case on contract interpretation grounds, concluding that the plaintiff had no ground for asserting a claim for the bad-faith denial of automobile insurance benefits because under the contract she was not entitled to benefits at all. *Id.* at 1068-70; *see, e.g.*, *Braidfoot*, 793 So. 2d at ¶ 46 (stating that where there is no breach of contract, "there could be no tortious breach of contract"). The *Owens* court did not address the applicability of the Restatement Second's contract-related provisions to the plaintiff's claim for the bad-faith denial of benefits; the only question before the court was the contract interpretation issue. *See* 910 So. 2d at 1069. *Owens* is therefore inapposite to the question in the case at bar, which is whether Mississippi courts treat actions for intentional bad-faith refusal to pay worker's compensation benefits as torts.

13

No. 11-60818

## C.

The district court was also led astray by its misinterpretation of our decision in *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222 (5th Cir. 2010), and its misreading of the Restatement (Second) of Conflict of Laws § 184. Neither *Ellis* nor § 184 is apposite here, contrary to the district court's misconception.

Ellis was a Mississippi employee of an Alabama subcontractor when he was injured on an apartment complex construction site in Mississippi. *Ellis*, 625 F.3d at 223. After collecting worker's compensation pursuant to Alabama law through his employer's insurance policy with Liberty Mutual, Ellis brought a personal injury suit against the owner, the general contractor and others alleging that their negligence contributed to his job-related accident and injuries. *Id.* at 224. Unlike in the present case, Liberty Mutual did not refuse Ellis worker's compensation benefits but paid him promptly and in good faith. *See id.* Applying section 145 of the Restatement Second of Conflicts, we held that Alabama law had a more significant relationship to the case because: Ellis' relationship with his employer was centered in Alabama; Ellis was "engaged" only with the Alabama worker's compensation scheme because he received worker's compensation benefits only pursuant to his employer's insurance coverage under Alabama law; and all of the alleged tortfeasors were Alabama corporations or residents. *Id.* at 226-27. Therefore, we concluded that Alabama law, rather than Mississippi law, applied to Ellis' negligence action against the alleged tortfeasors. *Id.* at 227.

Consequently, Williams' action for damages against Liberty Mutual in the present case is distinguishable from *Ellis* in many important respects: It is based on the insurer's independent tort against Williams outside the scope of his

14

employment by intentionally in bad faith refusing to pay him worker's compensation due to him under Mississippi law; it is not an action against third persons whose alleged negligence contributed to the same work-related accident out of which Williams' worker's compensation claim arose; and it is not an action against third-person tortfeasors who are incorporated in or reside in Alabama.[10] For these reasons and others, we concluded earlier in this opinion that Mississippi law, rather than Alabama law, has a closer relationship to Williams' case and applies to his intentional tort action against Liberty Mutual. Thus, the district court was simply mistaken in concluding that our opinion in *Ellis v. Liberty Mutual* "clearly establishes that the law of Alabama applies to Williams' claims." *Williams*, 2011 WL 5183572, at *7.

For essentially the same reasons, the district court was mistaken in its conclusion that Restatement (Second) of Conflict of Laws § 184 "prohibits recovery against the employer and carrier on a bad faith claim under Mississippi law." *Id.* at *10. Section 184 does not so provide. Instead, section 184 states that recovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which other specified circumstances prevail. The scope of section 184 is delineated by its comment *a*, which provides that: "The rule of this Section applies to all actions in tort or wrongful death that may be brought to recover damages for *injuries suffered by an employee in the course of his employment*." (Emphasis added.) Liberty

---

[10] Moreover, unlike in *Ellis*, Williams received workers' compensation benefits in *both* Mississippi and in Alabama, and thus was not "engaged" exclusively with Alabama compensation laws.

No. 11-60818

Mutual points to no authority—and in particular no Mississippi authority—that has extended section 184 of the Restatement to immunize insurance companies from actions based on intentional bad-faith refusal to pay worker's compensation. As we noted earlier, the Mississippi Supreme Court in *Holland* recognized, under common law, that an injured worker may recover damages from a worker's compensation insurer for an independent tort, outside the scope of the worker's employment, when the insurer intentionally and in bad faith refuses to pay worker's compensation to which the worker is entitled. Thus, we conclude that the district court misinterpreted section 184 and that the Mississippi Supreme Court would not adopt that incorrect reading as part of its conflict-of-laws jurisprudence.

### III.

For these reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.